WASHINGTON LIFE INSURANCE COMPANY v. HENRY HANEY.

1. EVIDENCE; *Declaration of Third Party; Life Insurance.* The declaration of a party whose life is insured for the benefit of another, made long after the application and the policy, cannot be received in evidence against the assured, to impeach the truthfulness of the application.

2. ——— *Copies of Papers set forth in Pleadings.* Where an instrument is set out in full in an answer, and its execution not denied under oath, no issue is raised as to its existence, and therefore there is no error in rejecting either the original or a copy when offered in evidence.

3. CONTRACT, VALIDITY OF; *Opinion of Party.* The law presumes that a policy of insurance is based upon the application; and in a suit on such policy it is not error to reject the testimony of the officers of the company that the policy was issued on the belief that the statements in the application were true, and would not have been issued if any of them had been known to be untrue.

4. INSTRUCTIONS; *Refusal; When no Error.* When the case made fails to show that all the instructions, or all touching a particular question, are preserved, it is impossible for this court to say there was any error in refusing a certain instruction, for it may have been refused because already given.

5. LIFE INSURANCE; *Basis of Contract; Application; False Answers.* Where a policy of life insurance stipulates that it shall be void if any of the statements in the application shall be found in any respects untrue, and where the application contains an instruction to the applicant to answer each question "to the best of his knowledge and belief, briefly and explicitly," and also a statement that answers made to the questions "shall form the basis of the contract for insurance, and also that any willfully untrue or fraudulent answers" shall void the policy, *held,* that the measure of truthfulness required by the policy was that indicated in the application, and that a mere misstatement, unless willful and fraudulent, would not avoid the policy on account of this stipulation.

*Error from Douglas District Court.*

ACTION by *Haney* upon a policy of insurance issued by plaintiff in error on the 12th of July 1869, upon the life of Eliza E., wife of said *Haney*. Amount insured, $2,000. Said Eliza died on the 13th of April 1870. Action commenced August 3d, 1870. The *Insurance Company* claimed that the answers made by said Eliza to the questions contained in the application for the policy were knowingly false, and were so made to induce said company "to issue said policy, and with the intent to defraud" the company. The action was tried at the February Term 1872. The record shows that—

"The defendant (insurance company) called as a witness Mrs. M. A. C., who testified, among other things, that she knew Mrs. Haney some five years next prior to her death; that about the 20th of July 1869 one of Mrs. C.'s family died of consumption; that at Mrs. C.'s house, and after the death referred to, and in conversation, Mrs. Haney said to witness, 'This is the way I expect to go.' The defendant then asked witness, as follows: 'What did Mrs. Haney say was the matter with her?' Plaintiff objected; objection sustained, and defendant excepted."

Questions as to the competency of certain evidence, and upon the giving and refusing instructions, are sufficiently stated in the opinion. Verdict and judgment for *Haney* for the full amount of the policy and interest. New trial refused, and the *Insurance Company* brings the case here for review.

*Riggs & Nevison*, for plaintiff in error:

1. The court erred in not admitting evidence showing what Mrs. Haney said about her health, in July 1869. Mrs. Haney had, a short time before that, said she had never had any of the diseases mentioned in the application (which covered nearly all diseases known,) nor had she had any serious illness, local disease, or personal injury; nor any disorder, infirmity, or weakness tending to impair the constitution. The answer charges these statements to have been knowingly falsely made by her for the purpose of defrauding the defendant. It was

therefore perfectly proper to prove what she said about her disease, and why she should say, "This is the way I expect to go." The question was proper as it inquired as to what she said in relation to her health. The answer to which question, it is claimed by the defendant below, would contradict the statement made in the application, and show most conclusively the fraud set up in the answer. *Aveson v. Lord Kinnaird*, 6 East, 188; *Kelsey v. Universal Life Ins. Co.*, 35 Conn., 225. The defendant had a right to prove what Mrs. H. said about her health, which we claim would have run back to time of application for insurance, and before that time, and would have shown the statements made in the application to have been fraudulent and untrue, and that she knew the fact when she made them.

2. We claim that the court erred in striking out the parts of the depositions of the president and medical examiner of the insurance company, as the matters stricken out were perfectly competent evidence. Defendant charged that the policy was obtained through the false and fraudulent statements made in the application, and that said defendant, relying on said statements, and believing them true, was induced thereby to issue the policy of insurance in suit. Evidence had been given to the jury, clearly showing that Mrs. Haney's father died from effect of fever-sore; her mother from pneumonia; that one brother had before that time died in Mrs. Haney's house, and in her presence, of consumption, and that one of her sisters had died of consumption, and that Mrs. Haney had, for some time prior thereto been doctoring for the consumption, and had subsequently died of that disease, and that the statements made in the application, in relation to said matters, were therefore false. It was competent for the defendant to prove by their officers that the company relied on such representations, believed them to be true, and that they would not have issued the policy had they known or believed they were not true. "A policy of insurance is avoided by a fraudulent representation in respect to a fact not material to the risk, if, in the judgment of the insurer, it

be material in respect to his inducement to undertake the risk:" *Valton v. National Fund Life Assurance Co.*, 20 N. Y., 36. "A positive misrepresentation to the underwriter, or concealment of a fact material in relation to the risk, or material in the mind and judgment of the insurer, will avoid the policy. It will avoid it, though the loss arose from a cause unconnected with the misrepresentation, or even though the misrepresentation or concealment happened through mistake, neglect or accident, without any fraudulent intention." 3 Kent's Com., 282, 283; Story on Sales, § 167; 1 Arnould on Ins., § 189; 3 Gray, 580.

3. The court erred in charging the jury as requested by plaintiff below, that "If Mrs. Haney answered the questions put to her, to the best of her knowledge and belief, any misstatement by her, unless the same was made willfully and fraudulently, will not avoid the policy." This instruction is clearly erroneous. The policy contains an express agreement between the plaintiff below and the defendant, that if any of the statements or declarations made in the application shall be *found* in *any* respect untrue, then the policy shall be void. The charge referred to, substantially tells the jury that this part of the contract amounts to nothing unless the misstatement is made "willfully and fraudulently," even though the same be ever so material. Can that be good law? Can a court say that a contract, deliberately made between parties, shall amount to nothing, and is not binding unless "fraud" exists therein? Have not the parties agreed that unless a certain condition of things exists the policy shall be void? Can a court legally tell a jury to pay no attention to such an agreement? An untrue statement or denial of a material fact, preceding or contemporaneous with the contract of insurance, prevents the policy that is based upon it from taking effect as a contract, whether the statement was made ignorantly and in good faith or otherwise. 98 Mass., 381; 3 Kent's Com., 283; 10 Pick., 535; 10 Cush., 446; 6 Gray, 221; 1 Phillips on Ins., § 537; Arnould on Ins., 450 to 455; 18 N. Y., 385; 20 N. Y., 52.

4. The court erred in refusing to charge the jury as requested by defendant below. "A policy, as other instruments, may refer to a record, or other papers, so as to make them a part of the written contract:" 1 Phil. on Ins., § 70. A written representation or document may be referred to in the policy to the same effect as if inserted in the body of it, and thus be made a part of it, and accordingly become a warranty of the fact stated in it, or other stipulations or conditions equally obligatory with the policy itself.

5. The defendant below asked the court to instruct the jury that "It is immaterial whether such statements, contained in said application, were untrue from design, mistake, or ignorance." This instruction the court refused to give, and in this the court erred. The parties had agreed in the policy that the same was received by the assured on the express condition and agreement, "that if any of the statements made in the application for this policy, upon the faith of which this policy is issued, shall be found in any respect untrue," the policy shall be void. The instruction asked was nearly in the language of the contract itself, and should have been given. "In insurance, the question is not whether the person making the statement was aware of its inaccuracy, or the assured was guilty of fraud, but simply whether the statement was incorrect, and the most pardonable mistake will consequently discharge the insurer." Angell on Ins., § 318; Kerr on Frauds and Mistakes, 72.

6. The defendant also asked the court to instruct the jury that "the statements and declarations made in Mrs. Haney's application for insurance, in reply to specific inquiries in regard to her own previous health, or to the cause of the death of her parents, brothers, or sisters, are material to the insurers, to enable them to estimate the risk proposed, and to determine upon the propriety of entering into the contract;" which instruction was refused. The parties to the contract of insurance agreed that the statements and declarations of Mrs. Haney, in answer to printed questions in the application in regard to her own previous health, and the cause of death of

her parents, brothers and sisters, were material. If they were not regarded material by the parties, why did they agree that, if they should be found untrue in any respect, the policy should be void? See cases in 6 Cush., 340; 20 N. Y., 55; 30 N. Y., 136; 98 Mass., 405; 4 R. I., 141. These cases show that the parties entering into the insurance have stipulated, "The basis of the contract between us shall be, that you shall answer truly these questions; and if you do not answer them truly, the policy shall be void." Insurance contracts require the highest degree of good faith, and the most delicate integrity. The assured is held bound to communicate to the insurer, in the application for insurance, every fact which is in truth material to the risk and within his knowledge, whether he deems it material to the risk or not. 2 Greenleaf Ev., § 396; 8 Howard, 235; 17 Curtis, 569; Angell on Ins., §§ 147, 317, 320; Kerr on Frauds and Mistakes, 72, 143.

*Thacher & Stephens*, for defendant in error:

1. There was no error in overruling the question put by defendant to the witness, "What did Mrs. Haney say was the matter with her?" It does not appear that Mrs. Haney had said that anything was the matter with her. The question presumes she did, and was objectionable for that reason, as presuming a fact not in proof, a form of interrogatory not even allowable in cross-examination: *People v. Mather*, 4 Wend., 229. The plaintiff in erorr says "that her answer would contradict her statement made in the application, and show most conclusively the fraud set up in the answer." The question put was objectionable, as being leading, as presuming a matter true which was not proven, and as being the simple hearsay statement of a person whose declarations could not influence the action, as at the time of making it she had no interest in the policy. From the time of taking the policy, her interest ceased, and she stood in the light of a vendor or assignor after parting with title. In the case of *Rawls v. American Life Ins. Co.*, 27 N. Y., 282, Wright, J., uses this

language: "Fish was not, after the issuing to the plaintiff of the policy in suit, a party in interest in that contract, and could make no statement or admission that would divest the right of the plaintiff." In the case at bar, the following question was put to the same witness by defendant, and excluded by the court: "You may state if you had any conversation with Mrs. Haney, during the course of the summer, in reference to her health?" The summer referred to was the summer of 1869. The policy of insurance was issued in July 1869. Her declarations then must have been mere hearsay. But the question, on its face, calls for her statements as to her health at the time, and not at a prior period, and the counsel did not then claim, as he now claims, that he proposed by the answer to show what her health had been, and without accompanying his question with some offer showing the pertinency of the proposed proof it would not be error to exclude it, even if it were otherwise competent. 21 Iowa, 469; 7 How. Pr. Rep., 71; 19 Wend., 203.

2. The next exceptions arise upon the decision of the court striking out parts of the depositions of the officers of the insurance company. It is believed that it will not be contended that the refusal to allow the application to be proven by a copy was an error. Nor is it believed that the practice of the insurance company, in its details of business, can be held material or competent evidence to bind this party. The court must look at the application itself to see what is there asked for, and what, by its terms, the party had a right to rely upon, and this must also be construed in the light of the circumstances surrounding it. The witness Charlton swears that he read to Mrs. Haney all that was printed upon the application. Under the head of "Instructions," there is printed on the application, "Answer each of the questions on the first page to the best of your knowledge and belief, *briefly but explicitly.*" A part of said first page is taken up with the following: "It is hereby declared that the above are fair and true answers to the foregoing questions, and it is acknowledged and agreed by the undersigned that the above statements shall

form the basis of the contract for insurance, and also that any
*willfully untrue or fraudulent answers*, any suppression of facts
in regard to the party's health, or neglect to pay the premium
on or before the day it becomes due, will render the policy
null and void, *and forfeit all payments made thereon.*" Here
was the application, and the question is, What, in law, had
the party a right to rely upon? not, what were the operations
of his own mind? It is the question for the court and the
jury, and the attempt to swear that he would have done one
thing or the other, or would have done nothing at all, is an
attempt, through the witness, to usurp the province of the
tribunal which the law has constituted to pass upon these
questions. The question is, How far had the defendant, in
view of all the facts of the case, a right to rely upon the rep-
resentations made in the application? This *right* is the
measure, and it makes no difference whether this witness was
actuated one way or another. The law presumes the appli-
cation was the inducement to the issuing of the policy. It
cannot be claimed that the *representations* of the application
can be changed into warranties by the operation of the defend-
ant's officers' minds in considering them. This would be an
entire new rule for the construction of contracts. 40 Barb.,
143; 27 N. Y., 290; 7 Wend., 72; 1 Holt, 283; 3 Eng. Com.
L., 119; 27 Eng. Com. L., 27.

But the representations were not warranties. This contract
of insurance is to be construed like every other contract, ac-
cording to the intention of the parties, and that intention is
to be gathered from the whole contract, and the acts and con-
duct of the parties in making the same. It is also a maxim
of law that the acts of the parties under a contract are the
best interpretation of its meaning. Now, the company's
agent, Charlton, read to Mrs. Haney that part of the instruc-
tion directing her to answer the questions according to the
best of her knowledge and belief, and she orally answered
the same under that instruction, and the answers were by
Charlton reduced to writing, and signed by her. This is the
version of the company's agents alone. The other party can-

not speak. The statement then contains the clause that any willfully untrue or fraudulent answer shall avoid the policy. Now what did Mrs. Haney believe was the effect of what she had done? Did she believe that any chance misstatement made by her would lose the money she was paying, and make the policy that she was to get of no effect and void? Did she so intend? Did she intend that if perchance some person should think that she had been attacked with some disease mentioned in the application (and the counsel naively confesses that they are nearly all mentioned therein) that then, whether she knew it or not, or whether she fraudulently misstated or not, the policy was void? Did Charlton intend that she should so believe? On the contrary, did she not believe, and had she not the right so to believe, that if she acted without fraud, and answered truly, according to the best of her knowledge and belief, that then, her acts being in good faith, the contract was binding? Now, Charlton represented the company. He was, so to speak, *the company.* He held out this inducement to her. The policy was not shown. All that Mrs. Haney knew of it was, that she was to obtain a policy of insurance. Is it possible that, under such a state of facts, there can be any doubt on this question? "All contracts are to be construed to accomplish the intention of the parties; and in determining their different provisions, a liberal and fair construction will be given to the words, either singly or in connection with the subject-matter," is the language of the court in the *Binghamton Bridge Case,* 3 Wallace, 74. Warranties will not be created nor extended by construction. They must arise from the fair interpretation and clear intendment of the language used. And the policy is to be strictly construed against the company. But the policy, it is claimed, also helps the interpretation of the company, for it declares, "If any of the statements or declarations made in the application for this policy, *upon the faith of which this policy is issued,* shall be found in any respects untrue, the policy shall be void." Upon faith of *which* of the statements the policy was issued, does not appear, and perhaps cannot be shown.

But supposing it is issued upon the faith of all the statements contained in the application, still it is to be held that it is upon the statements *as they were then made*, to-wit, according to the best information and belief of the party making them, and with the qualification that to avoid the policy they must be fraudulently made. Otherwise this clause will be a mere trick and subterfuge to catch the unwary. *Hogle v. Guardian Life Ins. Co.*, 4 Abb. Pr. Rep., (N. S.,) 246.

3. There was no error in the charge that, "If Mrs. Haney answered the question put to her, to the best of her knowledge and belief, any misstatement by her, unless the same was made willfully and fraudulently, will not avoid the policy." This is directing the mind of the jury to the issue before them. The defendant, in its answer, had only tendered an issue of fraud upon which it offered proof. This issue it was bound to make out affirmatively. In *Campbell v. N. E. Mutual Ins. Co.*, 98 Mass., 394, the court says: "The burden is upon the defendant, notwithstanding this proviso is written in the policy, to set forth and establish the facts relied upon to defeat the contract upon that ground."

Nor was there any error in refusing to give the instructions asked by plaintiff in error. The court could not, in any event, correctly assume that the statements were warranties. That question must depend upon the finding of the jury upon the understanding and intent of the parties. But if they were warranties, they must be materially untrue, or untrue in some particular material to the risk. To say that a matter conceded to be wholly immaterial between the parties shall vary their relations upon material questions, is simply to state an absurdity. If courts have elsewhere been captivated with such specious logic, the courts of this state are yet untrammeled, and free to decide the question upon its intrinsic merits. There was evidence on both sides upon the question of fraud. The jury decided for the plaintiff. There was no error in the rulings of the court materially affecting the defendant, and the judgment should be affirmed.

The opinion of the court was delivered by

BREWER, J.: The defendant in error recovered a judgment
on a policy of insurance issued by the plaintiff in error on
the life of his wife Eliza E. Haney. To reverse this judg-
ment this proceeding in error has been brought. The ques-
tions presented in the record arise solely upon the exclusion
of testimony, and the charge of the court. Eight grounds
of error are presented and discussed by counsel for plaintiffs
in error in their brief; yet the determination of two or three
will dispose of them all and decide the case.

The first and third points present the same question, and
may be considered together. That question is this: Can the
declarations of a party, whose life is insured for the benefit
1. Life insurance. of another, made long after the application and
Declarations of
third party.      the contract, be received in evidence against the
assured to impeach the truthfulness of the application? The
contract is between the assured and the insurer. The parties
are the same whether that which is insured is a human life
or a building. There is this difference, that the life being
active can by its conduct affect the contract even so far as to
annul it, while the building being inanimate and passive has
of itself no such power. But aside from this the rights and
liabilities of the parties to the contract are the same. The
party insured is not a party to the record, and therefore he
declarations are not admissible on that ground. She is not
party in interest, as the whole benefit and interest inures to
the assured. She is not his agent, and authorized to speak
for him. Nor does she come within any other rule by which
her declarations can be received against him. The question
was fully examined and settled in the cases of *Rawls v. Ameri-
can Life Ins. Co.*, 36 Barb., 357; same case, 27 N. Y., 282;
*Mutual Life Ins. Co. v. Applegate*, 7 Ohio St., 292. In the
case of *Aveson v. Lord Kinnaird*, 6 East, 188, the declarations
made intermediate the application and the contract were
admitted; and in *Kelsey v. Universal Life Ins. Co.*, 35 Conn.,
225, declarations shortly prior to the applications were received.

In both cases however they were considered by the courts as being so near the application as to be properly a part of the *res gestœ*, and in the first case Lord Ellenborough spoke of it as perhaps proper as a sort of cross-examination of the statements made to the medical man. While it may well be doubted whether the reasons given for these two decisions are good, still they in nowise conflict with the well-settled principles upon which the other cases were, and upon which this must be decided.

The second ground of error is the striking out certain parts of the depositions of the officers of the company. The

2. Copies of papers set forth in pleadings. depositions were of the president and the medical examiner. That which was stricken out was, first, a copy of the application. As the application was set out in the answer, and not denied under oath, its execution was admitted; and even the original would have been surplusage in the testimony. The second part struck out was a statement of the manner of transacting business in the home office of the defendant. We do not see how the ruling of the court either way on this could have wrought injury to either party. The third, and that which presents the most difficulty, is the striking out from the deposition of the president of the company the following:

"I approved it, and a policy was thereupon issued in accordance with the application. In approving of it I was governed entirely by the answers and representations contained in the application, and by the fact that it had been approved by the medical examiner of the company. I never should have approved of the application, nor would the policy have been granted, had I known or had it been stated therein that the parents or either of them of the party whose life was to be insured had died from the effects of a fever-sore, or pneumonia, or that her brothers or sisters had died of consumption, or that the party whose life was to be insured had had bleeding at the lungs. The application was approved and the policy was issued in the full belief on the part of the company that the representations and answers contained in the application were true, and no policy would have been issued had I or the company supposed, or had any reason to

believe, that the representations and answers contained in the application were in any respect false."

The ruling of the court was correct. How far false statements, if any there were in the application, affect the validity

3. Validity of contract; opinion of parties.

of the contract, is a question of law for the court, and not one to be settled by the opinion or judgment of either party. The contract is based upon the application. The law presumes this, and determines the nature and extent of the relation. Were the statements true? That is one question, and this testimony throws no light on it. If false, were they willfully false? If false, did their mere falsity, independent of any question of materiality, avoid the contract? It is too plain for controversy that upon these questions this testimony has no bearing, and may be laid aside as immaterial. Nor can the question of materiality be decided or affected by this testimony. Where the application is in writing the law determines what is and what is not material, a determination which applies to all similar contracts. *Campbell v. N. E. Mutual Life Ins. Co.*, 98 Mass., 402; *Muller v. Mutual Benefit Life Ins. Co.*, 31 Iowa, 232. Of course the entering into the contract is, as to either party, a voluntary matter. Each insurance company may determine for itself upon what conditions it will make its contracts. It may lift any trivial, unimportant matter into an essential prerequisite and condition of the contract, and no person can make any legal complaint because it insists upon such condition; and any legitimate testimony which shows that it made such immaterial matter a condition of or material to its contract may be given in evidence. Of such nature is the testimony offered in the case of *Valton v. Nat. Fund Life Ins. Co.*, 20 N. Y., 32, where the company's officer stated during the pendency of the negotiations that the company would not take a risk under certain circumstances which in fact existed, but the applicant represented did not. But neither party can, without the knowledge of the other, lift an unimportant and trivial thing into a material and essential fact, and when the contract has been executed by the other party, and it is called upon to

35—10 KAS.

perform its obligations, say that it intended this trivial matter should be essential, and that it did not exist as represented. If a party would make anything material other than what the law says is material, it must be made known to the opposite party prior to the contract; otherwise the law will determine what is material upon the transactions as they took place between the parties. Hence, what the president of the company considered material, and what he would have done if he had known certain things, is immaterial, unless such judgment and determination were communicated to the other party prior to the contract. Not being thus communicated they were properly rejected by the court on the trial.

The remaining points were on the charge of the court. On the application of the plaintiff the court gave this instruction:

"If Mrs. Haney answered the questions put to her to the best of her knowledge and belief, any misstatement by her, unless the same was made willfully and fraudulently, will not avoid the policy."

And the court refused the following instructions asked by defendant:

"1st. That the statements and declarations which are contained in the application for insurance of the said Eliza E. Haney, and set out in the defendant's answer, are warranties; and if the jury shall find that any of such statements were untrue the plaintiff cannot recover.

"2d. It is immaterial whether such statements contained in said application, and set out in said answer, were untrue from design, mistake, or ignorance. If any of them are found by the jury to be untrue, the plaintiff cannot recover.

"3d. The statements and declarations made by the said Eliza E. Haney in her application for insurance, upon the faith of which the policy of insurance sued upon was issued, whether regarded as warranties, or representations of facts, must nevertheless be substantially true in all respects material to the insurer to estimate the risk to be assumed; and if materially untrue in any respect such untruths will avoid the policy, even if such untrue statements were made ignorantly and in good faith."

"6th. The statements and declarations made in Eliza E. Haney's application for insurance in reply to specific inquiries

in regard to her own previous health, or to the cause of the death of her parents, brothers, or sisters, are material to the insurers to enable them to estimate the risk proposed, and to determine upon the propriety of entering into the contract; and if they are in any material respect untrue the policy is void."

As the record fails to show that all the instructions are preserved, or all bearing upon the particular points embraced in these, it is doubtful whether under the ruling of this court in *Morgan v. Chapple*, (ante, pp. 216, 225,) there is anything here we can properly consider and decide. The instructions refused may have been refused because already given, and that given may have been accompanied and qualified by others so as really to present the law exactly as the counsel for plaintiff in error insist it should have been. We find in the record one instruction that qualifies it materially, given at the instance of the defendant, namely: "If at or before the time of making the application for insurance Eliza E. Haney actually had consumption, or any of the other diseases or infirmities enumerated in her application, and as to which she was interrogated and answered 'No,' then the policy is void, and the plaintiff cannot recover." More of similar import may have been given. Yet the instruction complained

5. Life insurance. Basis of contract. Application; false answers.

of is positive, clear, and free from any ambiguity; and if it state the law improperly may have misled the jury. It becomes therefore necessary to examine it, and in its examination we cannot avoid touching incidentally some of the instructions refused. The policy stipulates as follows:

"This policy is issued and accepted by the assured upon the following express conditions and agreements: 1st. [Here are enumerated a number of conditions, among them the following:] "Or if any of the statements or declarations made in the application for this policy, upon the faith of which this policy is issued, shall be found in any respect untrue." [Then follow others, and then is the following:] "then in every case the said company shall not be liable for the payment of the sum insured, or any part thereof, and this policy shall be null and void."

We do not understand the clause, "upon the faith of which this policy is issued," as limiting this condition to a portion of the application, or any particular statements therein. It does not mean to imply that there are certain statements which must be true because the policy is based upon them, while others are immaterial. It means that the policy is issued upon the faith of the whole application, with all its statements and declarations, and that if any of them are untrue the policy is avoided. We must therefore consider the application as a whole, and each party has a right to have it so considered. If the application propounds certain questions, and indicates in what manner they must be answered, it is enough that they are answered in that manner; and when the policy is based upon the statements and declarations of the application, it is based upon them made in the manner and under the rules laid down by the company in the application. If we turn now to the application we find the following:

"Instructions in filling up this application: First, answer each of the questions on the first page, to the best of your knowledge and belief, briefly but explicitly."

And at the close of the questions and answers of the applicant, and just before her signature, is the following:

"It is hereby declared that the above are fair and true answers to the foregoing questions, and it is acknowledged and agreed by the undersigned that the above statements shall form the basis of the contract for insurance, and also that any willfully untrue or fraudulent answers, any suppression of facts in regard to the party's health, or neglect to pay the premium on or before the day it becomes due, will render the policy null and void, and forfeit all payments made thereon."

While the policy for its validity requires truthfulness in the statements of the application, it is enough if they are true according to the degree and conditions of truthfulness required by the application. That is all the parties meant when they spoke of truthfulness in the policy. To presume otherwise, and suppose that the company meant one degree of truthfulness in the application, and another in the policy, is to impute a dishonesty which the law will never presume, and if shown

to exist will never sustain. We think therefore the court properly gave the instruction asked by plaintiff, and in so far as those refused convey a different doctrine they were erroneous. The judgment is affirmed.

All the Justices concurring.