### No. 11,035.

### SUPREME LODGE, KNIGHTS OF PYTHIAS OF THE WORLD, *v.* SCHMIDT ET AL.

LIFE INSURANCE.—*Evidence.*—*Admissions.*—Where one takes a life policy on his own life in a mutual society, payable upon his death to another, or " to such other person or persons as he may subsequently direct," no subsequent admissions of his are admissible in evidence against the beneficiaries in a suit by them upon the policy.

SAME.—*Construction of Mutual Policy.*—*Evidence.*—In actions upon life policies, issued by mutual societies, courts should construe the rules and regulations of such societies liberally; and this doctrine of construction is applicable generally to rulings on questions of evidence.

From the Superior Court of Marion County.

*D. V. Burns* and *C. S. Denny*, for appellant.

*J. M. Cropsey* and *C. M. Cooper*, for appellees.

NIBLACK, J.—Action by Clara B. Schmidt, Cora Walton and Bertha Schmidt against the Supreme Lodge, Knights of Pythias of the World, upon the following certificate, issued on the 11th day of December, 1878:

"No. 4,017.            FIRST CLASS—$1,000.

"CERTIFICATE OF MEMBERSHIP.

"Endowment Rank of the Order of Knights of Pythias.

"This certifies, that Brother Louis Schmidt has received the endowment rank of the Order of Knights of Pythias in section No. 3, and is a member in good standing in said rank. And in consideration of the representations and declarations made in his application, bearing date of December 2d, 1878, which application is made a part of this contract, and the payment of the prescribed admission fee; and in consideration of the payment hereafter to said endowment rank of all assessments as required, and the full compliance with all the laws governing this rank, now in force, or that may hereafter be enacted, and shall be in good standing under said laws, the sum of one thousand dollars will be paid by the Supreme Lodge, Knights of Pythias of the World, to Clara B. Schmidt, as directed by said brother in his applica-

tion, or to such other person or persons as he may subsequently direct by will or otherwise, and entered upon the records of the supreme master of exchequer, upon due notice and proof of death, and good standing in the rank at the time of death, and the surrender of this certificate: *Provided, however,* That if at the time of the death of the said brother there shall be less than one thousand members in this class there shall only be paid a sum equal to one dollar for each member in good standing in this class. And it is understood and agreed, that any violation of the within mentioned conditions, or the requirements of the laws in force governing this rank, shall render this certificate, and all claims, null and void, and that the said supreme lodge shall not be liable for the above sum, or any part thereof.

"In witness whereof, we have hereunto subscribed our names and affixed the seal of the Supreme Knights of Pythias of the World. D. B. WOODRUFF,

[L. S.] "Supreme Chancellor.

"Attest: JOSEPH DOWDALL,

"Supreme Keeper of Records and Seal."

The complaint averred full compliance with all the conditions of the certificate on the part of the said Louis Schmidt, as well as the plaintiffs, and the death of the said Louis on the 18th day of February, 1880.

Cora Walton and Bertha Schmidt were made co-plaintiffs with their mother Clara, who was the widow of the said Louis Schmidt, upon the ground that in the application for, as well as in the certificate as originally issued, they were made beneficiaries jointly with her.

Issue; trial by a jury at special term; verdict for the plaintiffs, assessing their damages at $1,117.80; new trial denied, and judgment on the verdict; appealed to the general term, and judgment affirmed.

We herewith set out two sections of the constitution of the order which were read in evidence:

"Section 4. Upon receiving from the S. M. of E. notice

of an assessment, he shall immediately forward the same to that officer, and give notice to each member of the class in which the assessment is made in the prescribed form, and notify him to pay the assessment within thirty days.

" Section 1. Upon receiving notice of an assessment each member shall at once pay the amount to the secretary and treasurer of the section to which he belongs. In case any member neglects for thirty days after date of notice to pay said assessment, he shall stand suspended from that class of the endowment rank for which said assessment was made, and shall forfeit all claims upon the endowment fund belonging to said class, and the fact of said suspension shall be reported to the supreme master of exchequer in the monthly report: *Provided,* That any member thus suspended for non-payment of assessment shall have the privilege of regaining all his rights as a member of the section in said class within three months, by passing a new medical examination, and paying all the assessments that may have accrued up to that time. But when three months shall have elapsed from the date of suspension, he shall be required to pay, in addition to the assessments that may have accrued during the first ninety days after such suspension, the sum of two dollars, pass a new medical examination, and then be re-admitted by a two-thirds vote of the members of the section present when the application is made. All reinstatements in accordance with this section shall be reported to the supreme master of exchequer by the secretary and treasurer in his monthly report. The provision of this section shall apply to all members now under suspension."

The endowment rank constitutes the life insurance department of the order of Knights of Pythias, extending over the entire United States, and at the time of the trial there were over twenty thousand members of that rank holding life insurance policies, or certificates of membership, as they are usually called.

John B. Stumph was, at the time the certificate in this case

was issued, and continued thereafter to be, the supreme master of the exchequer, or treasurer of the rank, residing and keeping his office in the city of Indianapolis. His principal duties were to receive from subordinate lodges notices of the deaths of members, to make and to notify all members of assessments which had been made, to collect the money due upon assessments, to keep suitable books, and to pay to beneficiaries the amounts which fell due upon policies issued to members. It was his custom, after receiving notices of the deaths of a sufficient number of members of the rank to make it necessary, to notify all the surviving members of such deaths by postal cards directed to their places of residence respectively by mail, and, in this way, to require them to pay an assessment of $1.10 each within thirty days after the date of the notices, which were usually sent out some days in advance of the date. Between the 11th day of December, 1878, and the latter part of June, 1879, Louis Schmidt, who also resided in the city of Indianapolis, received, by postal cards addressed to him through the post-office, notices of seven assessments of $1.10 each, all of which sums were paid by him in due time. About the 20th day of this last named month another assessment of $1.10 was made against him, known as Assessment No. 8, payable within thirty days after the first day of the ensuing month. This assessment was not paid, and in consequence he was, on the 1st day of August, 1879, by an appropriate entry on the books of Stumph's office, declared to be suspended from his class in the endowment rank. A few days before this entry of suspension was made Schmidt received notice of another assessment for $1.10, known as No. 9, payable within thirty days after said 1st day of August, 1879. On the 18th day of that month Louis Schmidt being then a hopeless invalid, and absent from home, his wife, Clara B. Schmidt, went to the office of the supreme master of exchequer for the purpose of paying said assessment No. 9. Stumph declined to receive the money upon that assessment, upon the ground that Schmidt had, since the notice was sent

out, been suspended from the rank for non-payment of assessment No. 8. Mrs. Schmidt thereupon offered to pay assessment No. 8, as well as No. 9, but Stumph refused to receive any money upon either assessment, informing her that her husband could only be reinstated by submitting to, and satisfactorily passing, a new medical examination. Two or three days after this occurrence Schmidt returned to his home, and, presumably acting upon information communicated to him by his wife, went with Nicholas Hanson, president of the section of the endowment rank in question, to Stumph's office for the purpose of taking measures for his reinstatement in the position from which he had been suspended, but did not succeed in being so reinstated.

At the trial the controlling question became and was, whether Schmidt had received notice of assessment No. 8, which he had failed to pay within the time required. Stumph testified that he had, either on the 20th or 21st day of June, 1879, deposited in the post-office at Indianapolis, properly addressed to Schmidt at his particular place of residence, a postal card containing notice of the assessment in controversy. Mrs. Schmidt, in her testimony, claimed that owing to her husband's very bad health, she had attended to and had principal charge of nearly all his business during the summer of 1879, including the reception of his mail matter, and that neither she nor her husband had ever received any notice of assessment No. 8. In that respect she was materially corroborated by her daughter Cora, who was also a witness in the cause. Mrs. Schmidt further claimed that her attention had been particularly directed to the matter of the assessments against her husband, and that she had never heard of the assessment, known as No. 8, until she called at the office of the supreme master of exchequer to pay assessment No. 9, as herein above stated.

Hanson was also called as a witness, and counsel for the defendant offered to show by him that between the 21st and 25th days of August, 1879, he accompanied Schmidt, the de-

cedent, to the office of the supreme master of exchequer, at the time he went to see about getting reinstated, and that he, Schmidt, there admitted, in the presence of Stumph, that he had received notice of assessment No. 8, in contest, and that he had not paid that assessment, and that he had been suspended for its non-payment; also, that for the purpose of assisting Schmidt to be reinstated, he, witness, as president of the rank in which the suspension had occurred, went with him to the medical examiner's office where he submitted to an examination and was rejected. But the court excluded the evidence thus offered for the alleged reason that no admission which the decedent might have made, at the time indicated, was admissible in abridgment of any right which the plaintiffs had already acquired in the certificate in suit.

If this action had been upon an ordinary life insurance policy, the decision of the court excluding what was proposed to be proven by Hanson would have been fully sustained by the authorities. *Fraternal, etc., Ins. Co.* v. *Applegate,* 7 Ohio St. 292; *Southern Life Ins. Co.* v. *Booker,* 9 Heisk. 606; *Washington Life Ins. Co.* v. *Haney,* 10 Kan. 525; *Rawls* v. *American Mutual Life Ins. Co.,* 27 N. Y. 282; *Mulliner* v. *Guardian Mutual Life Ins. Co.,* 1 Thomp. & C. (N. Y. S. C.) 448; 2 Phillips Ins., p. 626, sections 2058, 2059, 2060; *Pence* v. *Makepeace,* 65 Ind. 345; *Wilburn* v. *Wilburn,* 83 Ind. 55; *Harley* v. *Heist,* 86 Ind. 196 (44 Am. R. 285).

This is conceded by counsel for the appellant, but it is insisted that the provision in the certificate before us, authorizing Schmidt to make a different disposition of the proceeds by " will or otherwise," takes it out of the rule applicable to ordinary life insurance policies, recognized as above, and requires us to consider Schmidt as having been the real owner of the certificate until the time of his death; that Schmidt being thus the real owner of the certificate, at the time fixed in the offered evidence, it was competent to prove admissions made by him affecting its validity as a chose in action. The cases of *Durian* v. *Central Verein,* 7 Daly, 168; *Richmond* v.

*Johnson,* 28 Minn. 447 ; *Swift* v. *Railway, etc., Ass'n,* 96 Ill. 309 ; *Ballou* v. *Gile,* 50 Wis. 614 ; *Hutson* v. *Merrifield,* 51 Ind. 24 (19 Am. R. 722), and others, are cited as in principle sustaining this position.

But the precise point involved here was not ruled upon in any of those cases, and the facts in all of them were so essentially different from the facts upon which this case rests, as to render them practically valueless as precedents upon the question under discussion.

From the time of the issuance of the certificate until Schmidt's death, Mrs. Schmidt and her co-appellees (she legal and they equitable) were, in legal contemplation, the owners of it, subject only to the right of Schmidt to ultimately substitute other beneficiaries by will, or in such other manner as the rules and regulations of the order might permit. But this right to ultimately substitute other beneficiaries did not empower Schmidt to destroy the value of the certificate in the hands of the appellees by merely hearsay or irrelevant admissions concerning matters in issue between other parties. Schmidt having never exercised the right of substitution reserved to him, we are justified in assuming that he never intended to exercise it, and that, as between the appellees and the order, the former have been the absolute owners of the certificate ever since it was issued. We are, consequently, unable to hold that the alleged admissions of Schmidt to Hanson, in the presence of Stumph, were any more admissible as evidence in the case in hearing than they would have been in an action upon a life insurance policy issued in the usual form.

It is further insisted that the excluded evidence ought, in any event, to have been admitted as a part of the *res gestæ,* and that for that reason, if for no other, the court erred in its exclusion.

In response to this claim, it is sufficient to say that at the time Schmidt visited Stumph's office, in company with Hanson, the appellant had ceased to recognize him as a member

of its endowment rank, and had declined to accept payment of assessment No. 8 as well as No. 9, made against him, upon the theory that the certificate of his membership, held by Mrs. Schmidt, had become inoperative and void as an obligation resting upon the order. Whatever, therefore, Schmidt may have said in connection with his application for reinstatement in his former position, was said in connection with, and as part of, a new transaction, and hence was as to such new transaction only a part of the *res gestæ.* The admissions of Schmidt sought to be introduced in evidence were, in consequence, not competent as a part of the *res gestæ,* in connection with the non-payment of assessment No. 8, to which the appellant designed such admissions should apply.

In actions upon life policies, or certificates of membership, issued by mutual societies designed to secure the payment of moneys to those dependent upon its members, after the death of such members, courts should construe the rules and regulations of such societies liberally to effect the benevolent objects of their organization, and that doctrine of construction is applicable generally to rulings on questions of evidence, as well as in other respects. *Ballou v. Gile, supra; Erdmann v. Mutual Ins. Co.,* 44 Wis. 376.

Other questions were reserved at the trial and argued here, but what we have said practically disposes of all remaining questions adversely to the appellant.

The judgment below at general term is affirmed, with costs.

Filed Sept. 17, 1884. Petition for a rehearing overruled Nov. 26, 1884.