MRS. ARTIE GOODWIN v. THE PROVIDENT SAVINGS LIFE ASSURANCE ASSOCIATION OF NEW YORK, Appellant.

**Insurance Policy:** CONSTRUCTION. Where the terms of a policy
4  will bear two interpretations, that one will be adopted which sustains the claim for indemnity.

SAME  On conflict between the statements of the application, and
5  the provisions of the policy, the policy controls.

SAME. Hence, where the application stated that there should be no
2  indemnity for suicide, while the policy stated that it should be
3  incontestable, after two years, except for fraud in obtaining it, the insurer is liable for death, by suicide, occuring after the policy is two years old.

RENEWAL TERM POLICY. A policy of life insurance, which is
1  renewable, from quarter to quarter, on payment of premiums,

for the actual age attained, "less the return premium awarded," and which provides, that subject to the stipulation as to the payment of premiums, it shall be incontestable, after two years, except for fraud in obtaining it, is a continuing policy, governed by the principles applicable to ordinary contracts of life insurance, with regard to forfeiture for non-payment of premiums.

CONSTRUCTION OF STATUTE. McClain's Code, section 1733, declaring that, if an insurance company neglects to attach to the policy on "issue of renewal" thereof, a "true copy" of any application, or representation of, the assured, which may, in any manner, affect the validity of the policy, it shall be precluded from pleading, or proving, the falsity of any statement in the application—applies, where the copy of an application for reinstatement, attached to the policy, omits the examiner's report, contained in the original, and also a part of the statements made by the assured, in regard to his previous physical condition, and incorrectly states the place to which notices of premiums shall be addressed.

CONFLICT OF LAWS. An insurance policy, issued by a company located in New York, the premium on which, and the amount of which in case of death, are to be paid therein, and which contains an express agreement that it shall be construed to have been made within the state, is a New York contract.

*Same.* The reinstatement of an insurance policy, although accomplished in another state, consisting of a mere cancellation of a forfeiture, whereupon the original policy is restored and recognized as binding, without any different terms being agreed upon, is not a new contract, but the policy is to be governed by the laws of the state in which it was originally issued.

**Notice.** Under a New York statute, which requires notice of the maturity of premiums to be sent to the last known postoffice address of the assured, the informing the general agent in a casual talk on the street, of a change in such address, binds the company to send notice to the address so given.

SAME. Notice of such change in address given to a bank which collects premiums for the company, is notice to the company.

**Forfeiture:** NOTICE. An insurance company is not justified in forfeiting a policy for non-payment of premium, where the notice of its maturity was improperly addressed, and did not reach the assured.

FORFEITURE: *Burden of Proo*. An insurance company has the burden of proving that the amount of a premium demanded by it was correct, where such amount is variable, and the company alone had knowledge of such amount.

*Declaration.* The declarations of an assured as to the alleged forfeiture of the.policy for non-payment of premiums, are not binding on the beneficiary.

PRESUMPTIONS: *Notice.* No presumption arises that an insured received a notice of the maturity of a premium, where it was not addressed to the city in which he was at the time residing.

*Conflict of Laws.* The laws of New York are presumed, in the absence of evidence to the contrary, to be the same as those of Iowa.

LAW OF SISTER STATE: *Preliminary Proof.* Books entitled, "The Revised Statutes, Codes and General Laws of the State of New York," which purport to contain the text carefully compared with the original of all the general laws of the state in force at a stated time, published by B., a member of the New York bar, one book containing what purports to be a print certificate of the secretary of state, to the effect that so much of the matter contained in the text of this edition of the Revised Statutes, as purports to be a copy thereof, is a correct transcript of the Revised Statutes, as originally published, under the authority of the state, except such typographical errors in the original, as have been corrected in the copy, and except such parts as have been altered by acts of the legislature, and that, with respect to such acts, it conforms to the acts by which such alterations have been made, are inadmissible under Iowa Code, 3718, where the books do not purport to have been published under the authority of the legislature of New York, and where they are not proved to be commonly admitted as evidence of the existing law of that state, in the courts thereof.

**Practice Supreme Court:** WAIVER. Alleged error in sustaining a demurrer to a division of an answer, will not be considered, on appeal, where defendant made an amendment after such ruling, and no objection was taken to the division, as amended.

*Appeal from Cedar Rapids Superior Court.*—HON. T. M. GIBERSON, Judge.

WEDNESDAY, FEBRUARY 5, 1896.

ACTION at law, upon a policy of insurance, issued by the defendant company, upon the life of Matthew Goodwin. Trial to a jury. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Mills & Keeler* and *Hubbard & Dawley* for appellant.

*Charles A. Clark* for appellee.

DEEMER, J.—On the sixteenth day of November, 1887, the defendant, a corporation, doing a life insurance business, organized, and having its principal place in the state of New York, issued a policy of insurance to the plaintiff, upon the life of her husband, Matthew Goodwin, agreeing to pay her, in the event of the death of the assured, on, or before noon, of the sixteenth day of February, 1888, the sum of five thousand dollars. The policy was issued on what is known as the "renewable term plan," a method of insurance originated by the president of the defendant company, and first used in the year 1887. By the terms of the contract, the defendant agreed to renew and extend the insurance, during each successive quarter year, from the date thereof, upon the payment, on or before the sixteenth of February, May, August, and November, in each successive year, during the life of the assured, of the premiums for the actual age attained, in accordance with a schedule of rates printed on the back of the policy, less the return premiums awarded thereon. Goodwin, the assured, died by his own hand, on the eleventh day of November, 1891, at the city of Chicago, in the state of Illinois. His widow, the beneficiary, in the policy, brought this suit, having first given notice, and made the proofs of death, required by the terms of the policy. Defendant demurred, to plaintiff's petition, because there was no allegation therein, that the policy had been renewed, from time to time, by the payment of premiums, and because the action was prematurely brought. The demurrer was sustained, on the last ground, and overruled on the other, and,

thereupon, plaintiff filed an amended, and supplemental, petition, avoiding the defect reached by the demurrer, and pleading some other matters, not necessary to be here recited. The defendant, in answer, admitted the execution of the policy, and its renewal, from time to time, down to May 16, 1891; admitted the death of Goodwin, but denied that the policy was in force at the time of his death. Defendant further pleaded, as a second division of his answer, that the assured made a written application for insurance, in which he agreed that the representations therein contained, should be construed as warranties, and made the basis for the issuance of the policy, and that any false answers or statements should avoid the policy. It further pleaded that Goodwin represented in this application, that he was in sound health, and was not then, and had not been, intemperate, in the use of stimulants, and that he stated that he drank occasionally, but never to excess; that these representations were false and untrue; that Goodwin used intoxicating liquors habitually, and to excess; and that he made the representations he did, with intent to deceive the defendant, and procure the policy in suit. In the third division of the answer, the defendant pleaded other false and untrue statements made by Goodwin, respecting the place of his birth, and the condition of his health, which need not be more particularly set out. In the fourth division, the defendant pleaded that plaintiff, and the assured, wholly failed, and neglected, to pay the premiums, necessary to be paid on May 16, 1891, in order to renew and extend the insurance from and after that date, and that the policy expired at that date, by the express terms thereof; that thereafter, and on May 21, 1891, Goodwin applied for reinstatement in the defendant company, and, as a basis thereof, presented a health certificate, in which, among other things, he stated

that he was then in good health, and had been since May 16, 1891; that, in truth and in fact, Goodwin was not in good health, and free from disease, and was not temperate in his habits, when he made the certificate of health. The fifth division pleaded failure of Goodwin, or plaintiff, to pay the quarterly premium, due August 16, 1891, in order to exted the policy, and alleges that written notice, of the amount of such premium, and of the place where the person to whom payment might be made, was mailed the assured, on July 15, 1891—the letter being addressed to him, at Fifteenth and Harney streets, Omaha, Neb., that being his last known postoffice address, and the one fixed by him, in the application for insurance, to which notice should be sent. The sixth division of the answer merely pleads the failure of Goodwin, or plaintiff, to pay the premium due August 16, 1891, and further alleges, that the statutes of the state of New York, which, it is claimed, should govern and control the contract in suit, requiring notice, etc., did not apply to policies like the one in suit. In the seventh division, the defendant averred that the application of Goodwin contained this statement: "It is agreed that death by my own hand, or act (except when mentally unaccountable), or death in violation of, or attempt to violate, law, are risks not at any time assumed by the society, under the policy applied for." And defendant further averred, that Goodwin took his own life, while mentally accountable, and, therefore, there was no liability on the part of the company. The plaintiff demurred to the fourth division of the answer, because the representations there pleaded, were not made in the application for insurance, and for the further reason that, by the terms of the policy, it was incontestable, except for fraud, in obtaining the policy in the first instance; to the fifth division, because of several alleged defects in the

notice sent out by defendant company; to the sixth, because no computation had been made, by the company, as to the amount of the quarterly premium Goodwin should pay, no deductions, or allowances having been made on account of any surplus portion of preceding payments, not needed for death, or quarterly fund; to the seventh, for the reason, that the policy sued on, became, and was incontestable, except for fraud in obtaining it. This demurrer was sustained, as to the fourth, and seventh, divisions of defendant's answer, and overruled as to the fifth and sixth, each party excepting. Thereupon, defendant amended the fourth division, by pleading discovery of the falsity of the representations therein referred to, on July 1, 1892, and offered to confess judgment for the amount of the premium paid, May 21, 1891. Thereafter, other pleadings were filed by each of the parties; the defendant, among other things, alleging that the contract of reinstatement in May, 1891, was a Nebraska contract, and that there was no law of that state requiring that a copy of the certificate of death be attached to, or made a part of, the policy. The defendant further pleaded that the original application for insurance was made in Nebraska, and the policy delivered in Omaha, in that state, and that there was no law in either the state of Nebraska, or the state of New York, requiring a copy, or copies, of the application to be attached to, or incorporated in, said policy. Such were the issues on which the cause was tried. The court, however, in its instructions to the jury, eliminated all questions made by the pleadings, save the issue as to the non-payment of the quarterly premium, claimed to have been due, August 16, 1891. The jury found for the plaintiff, on the questions of fact presented, and with their findings we are not called upon to interfere. The questions presented by this appeal, arise upon the sustaining of

plaintiff's demurrer to certain divisions of the answer, the rulings of the court, during the trial, and the giving, and refusing, of instructions to the jury.

I. The first question presented in argument relates to the sufficiency of the seventh division of the defendant's answer. The application which Goodwin made for his insurance, contained a statement which, if standing alone, would avoid the plaintiff's cause of action, for it is conceded that Goodwin committed suicide. But the policy contained this provision: "Subject to the stipulations regarding payment of premiums, and extra-hazardous occupations, claim under this policy by death occurring two or more years after its date, will be incontestable, except for fraud in obtaining this policy." If there were nothing more to the case than this provision of the policy, there would be no doubt that plaintiff's claim could not be defeated, because her husband took his own life; for a claim under the policy by death occurring two or more years after its date was incontestable, except for fraud. We have a case, then, for construction of these seemingly ambiguous and conflicting provisions. The tenets established for the guidance of courts in such matters, are well understood, and no one is better established than that in all cases the policy must be liberally construed in favor of the assured, so as not to defeat, without a plain necessity, his claim for indemnity. And when the words used may, without violence, be given two interpretations, that which will sustain the claim and cover the loss should be adopted. *Thompson v. Insurance Co.*, 136 U. S. 287 (10 Sup. Ct. Rep. 1019); *National Bank v. Insurance Co.*, 95 U. S. 673; *Moulor v. Insurance Co.*, 111 U. S. 335 (4 Sup. Ct. Rep. 466); *Wadsworth v. Tradesmen's Co.*, 132 N. Y. 540 (29 N. E. Rep. 1104); *Fitch v. Insurance Co.*, 59 N. Y. 557; *Garretson v. Association*, 74 Iowa 419 (38 N. W.

Rep. 127); *Meyer v. Casualty Co.*, 96 Iowa 378 (65 N. W. Rep. 328); *Collins v. Insurance Co.*, 95 Iowa 540 (64 N. W. Rep. 602). Now, by the terms of the policy it was incontestable, after two years from its date, except for fraud in procuring it,—subject, however, to the stipulations regarding payment of premiums, and extrahazardous occupations. That is to say, claims under the policy by reason of the death of the assured, were not to be controverted or disputed, except for some of the reasons stated, and death by suicide is not one of them. It will be observed that the clause on which the defendant relies, is not found in the policy in suit, but in the application, which preceded it, in point of time, and there is significance in the fact that the words used in the application were not carried forward into the policy. Another rule for interpretation may well be used here, which is that when there is a conflict between the provisions of the policy and the statements contained in the application, the former controls. Defendant's counsel contend with much plausibility that death by suicide was a risk not contemplated by the parties, nor covered by the policy. But we think such a holding would import into the terms of a policy something not found therein, and not contemplated by the parties,— at least, not by the assured,—at the time the policy was issued. And, as said in the *Wadsworth Case*, *supra*, "we should adopt that construction which we think the insurer had reason to suppose was understood by the insured." The proper construction of this policy, taken in connection with the application, we think, is that the policy does not cover death by suicide, occurring within two years from the date of its delivery, but that after two years it is incontestable, except upon the grounds stated therein. This construction will give effect to all the provisions of the policy, and as such a result is always sought after by

courts, in interpreting all classes of contracts, we are quite content with it.   We are the better satisfied with this conclusion, because it seems that, in life insurance, certain companies limit the operation of the conditions as to suicide, to a fixed period, and make their policies incontestable on that ground thereafter.   13 Enc. Brit. page 179.   For the reasons suggested, as well as for others which might be offered, we think the demurrer to the seventh division of the answer was properly sustained.   The case of *Mareck v. Association* (64 N. W. Rep. 68), from the supreme court of Minnesota, is directly in point; and, while we do not concur in all the reasoning of that opinion, we are satisfied that the result reached is correct.

II.   Defendant complains of the ruling on the demurrer, as to the fourth division of the answer.   It is sufficient to say at this time, with reference to this count, that the defendant amended it after the ruling on the demurrer, and no attack was made upon the division as amended, by demurrer or otherwise.   True, the court withdrew the defense pleaded by this division, from the jury, but this had no relation to the ruling on the demurrer.   There is nothing here to complain of, even if it be conceded that the demurrer was improperly sustained.

III.   The lower court withdrew from the jury all defenses based upon the application, or the certificate for reinstatement, for the reason that no full, or correct copy of the application, and no copy of the certificate, were annexed to the policy.

These holdings of the court are complained of. It is insisted, that a substantially correct copy of the application was attached to the policy, and that, if it be conceded that the copy was insufficient, yet, as the contract was made, either in the state of New York or of Nebraska, and as there is no law in either of said states, requiring a copy of the application to be

attached, it may rely upon any false statements or warranties contained in the application. The original application and policy of insurance have been certified up for our inspection, to aid us in determining whether a true copy of the application was attached to the policy, and an examination of them leads us to the conclusion that the statute, hereinafter referred to, has not been complied with. Among other things, the places to which notices of premiums shall be addressed, is incorrectly stated in the copy. Again, some of the statements made by the assured, with reference to his past afflictions, were not carried out in the copy attached to the policy, and no part of the examiner's report is included in the copy attached. The relevancy of this omission is made apparent by McLain's Code, section 1733, which provides that: "All insurance companies, or associations, shall, upon the issue or renewal of any policy, attach to such policy or endorse thereon, a true copy of any application or representations of the assured, which, by the terms of the policy, are made a part thereof, or of the contract of insurance or referred to therein, or which may, in any manner, affect the validity of such policy. The ommission to do so shall not render the policy invalid, but if any company or association neglects to comply with the requirements of this section, it shall be precluded from pleading, alleging, or proving such application or representations, or any part thereof, or any falsity thereof, or any parts thereof, in any action upon such policy, * * *" As we have said, it is argued that the policy in suit is a New York or Nebraska contract, and that there is no such law as that above set forth, in either of these states. The policy was signed by the president and secretary of the company, in the city of New York. The premiums are made payable there, and the amount of the policy was to be paid, in the event of the death of the

assured, at the city of New York. It was also expressly agreed that the policy should be construed to have been made in the state of New York. It was, therefore, a New York contract, and is to be governed by the laws of that state. Richards, Ins., section 44. Now, in the absence of all proof to the contrary, the laws of the state of New York are presumed to be the same as in this state. *Seiverts v. Association*, 95 Iowa, 710 (64 N. W. Rep. 671). The defendant, upon the trial, attempted to prove that there was, and is, no such statute in the state of New York, as the one before quoted, and for this purpose offered in evidence four volumes of books, entitled, "The Revised Statutes, Codes and General Laws of the State of New York," which purport to contain the text, carefully compared with the original, of all the general statutory laws of the state, in force January 1, 1890, published by one Clarence F. Birdseye, of the New York bar. What purports to be a printed certificate of the secretary of state is also in one of these volumes, to the effect that so much of the matter contained in the text of this edition of the Revised Statutes, as purports to be a copy thereof, is a correct transcript of the text of the Revised Statutes, as originally published under the authority of the state, except such typographical errors in the original as have been corrected in the copy, and except such parts as have been altered by the acts of the legislature, and that, with respect to such parts, it conforms to the acts by which such alterations have been made. None of these volumes purport to have been published under the authority of the legislature of New York, nor were they proved to be commonly admitted as evidence of the existing laws of that state, in the courts thereof, as required by section 3718, of the Code of Iowa. They were, therefore, inadmissible, and the court below properly rejected them. We return, then, to the presumption that the law of New

York was the same, with reference to attaching copies of the application, as it is here, and the conclusion is inevitable that defendant cannot rely upon any alleged false representations, or warranties in the application, for insurance. It is argued, however, that the rein-statement or renewal, which was made in May, 1891, when the assured furnished the health certificate, was a Nebraska contract, and that there is no law of that state requiring copies of the application or certificate of health to be annexed to the policy, and that, if this be not true, the statute of this state does not apply to renewals or reinstatements. Adverting to this last claim first, it is sufficient to say that the statute we have quoted is about as broad as language can make it, and we think it covers a renewal or reinstatement of the policy. Moreover, the rein-statement was not the making of a new contract, for no new or different terms were agreed upon. It was simply the cancellation of a forfeiture, whereupon the contract was restored, and recognized as binding by the company. *Lindsey v. Aid Soc.*, 84 Iowa, 734 (50 N. W. Rep. 29); *French v. Association*, 111 N. C. 391 (16 S. E. Rep. 427). The contract remained a New York contract after the reinstatement, the same as it was before, and must be governed by the laws of that state. It is further to be noted, that the application for rein-statement was accepted at the home office, in New York, and it is affirmatively shown that no officer or agent of the defendant in Nebraska, had authority to make reinstatements or renewals. The defendant offered in evidence a copy of the Compiled Statutes of the State of Nebraska, which were rejected by the court below. We are inclined to think these statutes were sufficiently identified, but, for the reasons above suggested, they were properly rejected. But, aside from all this, we do not think the company established a ground for forfeiture, because of non-payment of the

May, 1891, premium.   The notice, which was sent the assured, of the maturity of the premium, was improperly addressed, and did not reach the assured, but was returned to the company.   And there is no showing as to the amount due in May, for the non-payment of which the forfeiture is asked.   The defendant relies upon statements made by the assured, as to the amount due, and as to the alleged forfeiture.   It seems to be well settled, however, that his declarations are not binding upon the beneficiary.   2 May, Insurance, section 579a; *Insurance Co. v. Cheever*, 36 Ohio St. 201; Bliss, Ins., section 383; *Insurance Co. v. Haney*, 10 Kan. 525; *Seiverts v. Association, supra*.   The court below was right in refusing to submit the question of misrepresentations in the certificate of health.

IV.   We turn now to the alleged forfeiture for failure to pay the August, 1891, premium.   It was conceded by both parties, that the law of the state of New York, required that the defendant, before it could forfeit a policy for non-payment of premium, should, at least thirty, and not more than sixty days, prior to the day when the premium is payable, address and mail, postpaid, to the assured, at his or her last known post-office address, a written or printed notice, stating the amount of such premium, the place where, and the person to whom payable, and that unless the same should be paid to the company, or to a duly-appointed agent or other person authorized to collect such premium, within thirty days after the mailing of such notice, the said policy, and all payments thereon, will become forfeited and void.   It appears from the evidence that the defendant, on the fifteenth day of July, 1891, addressed a notice to Matt Goodwin, of the maturity of the August 16, 1891, premium.   This notice was addressed to the assured, at Fifteenth and Harney streets, Omaha, Neb.   Now, it

is claimed by the company that this notice was addressed to the last named post-office address of Goodwin, while the plaintiff insists that both she and the assured gave notice to the defendant's agents of a change of address. This notice is claimed to have been given one Hall, a general agent of the defendant company, upon the streets of the city of Omaha, and to the Commercial National Bank of Omaha, which, for a time, at least, was charged with the duty of collecting premiums. The lower court submitted to the jury the question as to whether there was notice of a change of address given to either of these agents, and instructed that, if there was, then there was no forfeiture. We think there was ample evidence to sustain these instructions. The notice to Hall is not denied, but it is claimed that it was given to him upon the street, in a casual conversation, and therefore, was not binding upon the company. There was evidence tending to show that Hall was a general agent, and uncontradicted evidence that he received the notice. And we think it was given to him in such a manner as to bind his principal. The place where the notice is given is entirely immaterial, if it was conveyed to him as agent of the company, and for the purpose of having it act thereon. According to the evidence, Hall was directed to change the address from Fifteenth and Harney, to the general delivery. On the thirteenth day of July, 1891, Mrs. Goodwin wrote a letter to the Commercial National Bank, which bank was then collecting premiums for defendant, to forward all notices of assessments under her husband's policy, to 57 Twenty-third street, Chicago, Ill. This letter was received by the the bank, July 15, and on the sixteenth it notified the defendant to send notice as requested. This notice was received by the company July 20,1891. The only question, with reference to this notice of July 13,

1891, is, whether it was binding upon the defendant. Appellant contends that notice to the bank was not notice to it, for the reason that it had no authority whatever, except to collect and receive premiums, and to deliver receipts to the assured.   It seems that this question has heretofore been decided by this court, adversely to appellant, in the cases of *Mayer v. Insurance Co.*, 38 Iowa, 304; *Loughridge v. Association*, 84 Iowa, 141 (50 N. W. Rep. 568), and authorities cited. The authorities cited by appellant's counsel are not in point.

V.   It is also insisted that there was evidence to show that the assured received the notice, although it may have been incorrectly addressed; that it in fact, went to the general delivery, where the assured directed it should go, and, as it was never returned to the defendant company, the presumption obtains that it was delivered.   It is sufficient to say, in answer to this contention, that no such issue was made in the pleading.   The claim was, that a notice was sent, as required by the New York statutes, to the last known post-office address of the assured, and, as payment was not made within the time allowed thereby, that the policy was forfeited. The defendant did not, in any of its pleadings, aver that the assured had actual notice of the maturity of the premium.   But, aside from all this, the notice was not addressed to the city or town where the assured, at the time resided.   He was then living in Chicago, and it seems to be a well-established rule, that, under such circumstances, no presumption arises, that the addressee received the notice.   See *Henderson v. Coke Co.*, 140 U. S. 25 (11 Sup. Ct. Rep. 691); 2 Whart. Ev., Sec. 1323; *Carter v. Insurance Co.*, 110 N. Y. 15 (17 N. E. Rep. 396); *Garretson v. Association*, 74 Iowa, 419 (38 N. W. Rep. 127); *Garbutt v. Association*, 84 Iowa, 294 (51 N. W. Rep.

148); *Phelan v. Insurance Co.*, 113 N. Y. 147 (20 N. E. Rep. 827). The court did not err in refusing to submit the question as to the actual receipt of the notice by the assured, or in refusing to give the instructions asked by defendant upon this subject.

VI. Complaint is made of the fifth paragraph of the court's charge, which required the defendant to show that the sum claimed as premium, *i. e.*, eighteen dollars and sixty-five cents, was the correct amount which was due in August, 1891, after awarding and deducting return premiums for that quarter, etc. No valid objection can be lodged against this instruction, in view of the terms of the policy, which provide, that the premium which could be required, was "less the return premiums awarded," and that "maximum quarterly premiums were to be reduced in each case by surplus portion of preceding payments not needed for the death fund and quarterly fund." It appears that in every instance these return premiums had been deducted from premiums previously paid, and that they varied in amount. Knowledge as to the amount of the return premiums, was solely in the possession of defendant, and, under well-known rules, the burden was upon it to prove the amount thereof. Plaintiff could not do it, as she had no data upon which to act. This is merely stating a general rule,--that where the amount of the premium to be paid, is variable, and knowledge as to the amount rests peculiarly with the company, that it must show that the amount demanded, was the correct sum. *Tobin v. Aid Soc.*, 72 Iowa, 261 (33 N. W. Rep.); *Underwood v. Legion of Honor*, 66 Iowa, 134 (23 N. W. Rep. 300); 2 May, Ins., Sec. 345a. The instructions given by the court, with reference to this subject, were correct, and those asked by defendant, in so far as they embodied correct rules of law, were given by the court.

VII.   Certain errors are assigned in the admission and rejection of testimony.   We need not set them out.   It is sufficient to say that we discover no error. The questions presented are unimportant, and this opinion has already grown too long.

VIII.   Some claim is made that the policy in suit, being a renewable one, from quarter to quarter, is not governed by the ordinary principles applicable to life insurance contracts.   Suffice it to say, in answer to this claim, that we see no merit in it.   The policy in suit is a continuing one.   It gave the assured, and his beneficiary, the right to make it incontestable, as to certain matters, and this they did, by the payment of premiums for more than two years.   It also gave them the right to deductions for return premiums, as before stated, and promised them an additional credit at the end of ten years.   Construed with such of the provisions of the New York statutes as we have, it clearly appears that it should have no other effect than an ordinary life policy, which could be forfeited for non-payment of premiums, the same as other insurance policies.   The contract was one of insurance, pure and simple; and the ingenuity of the author should not be allowed to work a fraud or injustice upon those who confided in the belief, that upon payment of premiums after notice, as required by the statutes of New York, they, after the expiration of two years, had an incontestable policy. We have patiently considered the whole case, and examined a long line of authorities, cited by counsel on either side, and have also made an independent search for cases which would aid us in disposing of the questions presented; and, while we have not discussed every proposition presented, we have considered those matters which we believe to be controlling, and are of the opinion that the judgment should be AFFIRMED.