The Supreme Lodge, Ancient Order United Workmen, et al. v. Hutchinson.

No. 866.

## THE SUPREME LODGE, ANCIENT ORDER UNITED WORKMEN ET AL. V. HUTCHINSON.

LIFE INSURANCE.—*Mutual Benefit Association.*—Certificates issued by mutual benefit associations are, in legal contemplation, when the insurance feature is in question, policies of insurance, and are, in most respects, governed by the rules of law which apply to ordinary insurance contracts.

SAME.—*Application.*—*Warranties.*—Statements made by the assured in his application are not deemed warranties unless they are incorporated in the policy, or are in some appropriate manner referred to in that instrument.

SAME.—*Constitution and By-Laws.*—A member of a mutual benefit association must take notice of the constitution and by-laws of the association, and must be governed by them in all dealings with it as a member; but such association can not, by virtue of provisions in the constitution and by-laws, make a statement in the application, executed before the party becomes a member, a warranty, when the statement will not bear such a construction.

SAME.— *Warranty of Statement of Relationship of Beneficiary.*—A statement in an application for membership in a mutual benefit association, that the applicant has directed "that the amount named in the beneficiary certificate, to which I shall be entitled, if received into full membership into this lodge, shall be made payable to Margretta Hutchinson, wife," is not a warranty or material representation, the relationship only being required to be given as a mere incidental matter for the purpose of designating the beneficiary.

SAME.—*Fraud.—Bad Moral Character of Assured.*—Where a mutual benefit association requires good moral character as a qualification for membership, but does not call on, nor depend upon, the applicant to show such qualification, the failure of such applicant to disclose former misdeeds rendering his moral character bad, is not such a legal fraud upon the association as to justify it in refusing to pay his certificate after accepting him as a member and collecting dues and assessments from him until his death.

SAME.—*Rights of Beneficiary as Against Widow of Assured.*—Where the laws of a mutual benefit association place no limitation upon the right of a member to designate the beneficiary of his certificate, except to restrict the beneficiary to certain classes composed of members of his family, relations by blood, and those dependent upon him, and does not make the certificate absolutely and primarily payable to the widow of the member, and he has named as the beneficiary a woman who has lived with him as

his wife, and borne him children, without knowledge that he has a lawful wife living, she is entitled to the amount named in the certificate as against the wife. While not his wife, the named beneficiary was dependent upon the assured and had a moral right to look to him for support.

From the Vanderburgh Circuit Court.

*J. G. Owen, G. A. Hoff* and *F. M. Williams,* for appellants.

*J. B. Rucker, B. K. Elliott* and *W. F. Elliott,* for appellee.

GAVIN, J.—This was an action by appellee upon a beneficiary certificate issued to Charles A. Hutchinson, who was a member of A. O. U. W.

The facts from which the controversy arises are these:

The A. O. U. W. is a "fraternal, charitable, beneficial, and benevolent order, organized for the promotion of the social and fraternal welfare of its members, and the protection of those dependent upon them." Its constitution has the following provisions as to membership and applications:

"37. Membership—No person shall be admitted to membership in the order except he be a white male of the full age of twenty-one years, and under fifty years of age at the time of receiving the Workman degree, and unless he be of good moral character, in sound, bodily health, capable of earning a livelihood for himself and family, and is a believer in the existence of a Supreme Being, the Creator and Preserver of the Universe. Nor shall any man be admitted to membership in this order who is an habitual drunkard, or who is engaged in the sale of intoxicating liquors, wine or beer as a beverage."

"39. Applications for Membership—Each application for membership shall be made in writing, signed by the applicant, stating his age, occupation, residence, the name of the person to whom the benefit is to be made payable, and the relationship existing between the beneficiary and

the applicant. The application shall be a warranty of the truth of all the facts therein stated."

As an incident to its organization, it issues, upon certain conditions, a beneficiary certificate, providing for the payment of $2,000 to the person therein named.

The following is the provision concerning beneficiaries:

"5. Beneficiaries—Each member shall designate the person or persons to whom the beneficiary fund due at his death shall be paid, who shall, in every instance, be one or more members of his family, some one related to him by blood, or who shall be dependent upon him."

In 1876 Charles A. Hutchinson was living in Illinois with Emma Hutchinson, to whom he was lawfully married, and by whom he had two children. In that year he abandoned them, leaving them entirely destitute, and went off with another woman, with whom he lived as his wife until her death four or five years later.

After her death in 1882, he went to Evansville, Indiana, where he married appellee Margretta, representing himself to be a widower. She married him believing this to be the case, without any knowledge of his previous life. She continued to live with him as his wife until his death, bearing to him three children, who survived him. The last child was born but two days before his death, and she and they were at that time dependent upon him for their support, and were by his death left without any means of support.

In 1888 said Charles A. Hutchinson made application for membership into said order at Evansville, and was in due course received and continued a member in good standing, with all dues and assessments paid, until his death in 1890. After his admission, he received the benefit certificate sued on, in which the designated beneficiary is "Margretta Hutchinson, bearing to him the relation of wife." A large proportion of the assessments against him were paid from appellee's individual earnings. Proper proofs of death

were duly made, and the money to pay the loss was collected by the order, and was in the treasury at the time of commencing suit. The order was notified by Emma Hutchinson that she claimed the money as the lawful wife, whereupon Margretta, upon its refusal to pay her, brought suit upon the certificate. Emma was made a party defendant and filed a cross-complaint. Judgment was rendered on the pleading in favor of Margretta.

Both Emma, the lawful wife, and the order of A. O. U. W. appeal.

The beneficiary certificate is as follows:

SUPREME LODGE, ANCIENT ORDER OF UNITED WORKMEN.
No. 8,604. $2,000

This certificate, issued by the Supreme Lodge of the Ancient Order of United Workmen, witnesseth: That Brother Charles A. Hutchinson, a Workman degree member of Lone Star Lodge, No. 56, of said order, located at Evansville, in the State of Indiana, is entitled to all the rights, benefits and privileges of membership in the Ancient Order of United Workmen, and to designate the beneficiary to whom the sum of two thousand dollars of the beneficiary fund of the order shall at his death be paid.

This certificate is issued upon the express condition that said Charles A. Hutchinson shall in every particular comply with all the laws of said order. He designates as beneficiary, under the terms hereof, Margretta Hutchinson, bearing to him the relation of wife.

[Seal of Supreme Lodge.]

In witness whereof, the Supreme Lodge has caused this to be signed by its Supreme Master Workman and Supreme Recorder, and the seal thereof to be attached this sixth day of June, one thousand eight hundred and eighty-eight.

C. M. MASTERS,
Supreme Master Workman.

Attest:
W. W. SACKETT,
Supreme Recorder.

The Supreme Lodge, Ancient Order United Workmen, *et al. v.* Hutchinson.

We, the undersigned, Master Workman and Recorder of Lone Star Lodge, No. 56, do hereby countersign and attach the seal of this lodge hereto this 15th day of August, 1888.

[Seal of subordinate lodge.]      A. M. WEIL,

Attest:                     Master Workman.

     HERBERT CRAWFORD,

           Recorder.

The application for membership is as follows:

### ANCIENT ORDER OF UNITED WORKMEN.

#### AFFIRMATION OF CANDIDATE.

*To the Officers and Members of Lone . Star Lodge, No. 56, Ancient Order of United Workmen, Located at Evansville, County of Vanderburgh, State of Indiana:*

I, Charles A. Hutchinson, hereby declare that I became 47 years of age on my last birthday, and that to the best of my knowledge and belief I am of sound bodily health.

That I believe in a Supreme Being, the Creator and Preserver of the Universe.

That I am not a member of the Ancient Order of United Workmen, nor an expelled or suspended member of the same, nor a member of a clandestine lodge of the A. O. U. W.

That I have not been rejected within the past six months, either by any lodge, or examining physician of the order, and that I now seek admission to the A. O. U. W., in good faith, and will cheerfully conform to all its laws, usages and customs, keeping inviolate its secrets and private business transactions.

And I have directed that the amount named in the beneficiary certificate, to which I shall be entitled, if re-

ceived into full membership into this lodge, shall be made payable to Margretta Hutchinson, wife.

CHARLES A. HUTCHINSON,
Applicant.

[Countersigned.]                        WM. E. SHERWOOD,
Attest:                                        M. W., Lodge No. 56.
   WM. DAY,
     Recorder.

The order denies its liability upon two grounds:

*First.* It asserts that the application was a warranty that Margretta was the wife of Charles A., which was untrue.

*Second.* It insists that the applicant's failure to disclose to the lodge his past misdeeds was such a fraud upon it as authorizes an avoidance of the policy.

Certificates issued by mutual benefit associations, such as this must be regarded to be, when considering its insurance feature are, in legal contemplation, policies of insurance, and are in most respects governed by the rules of law which apply to ordinary insurance contracts. *Presbyterian Mutual Assurance Fund* v. *Allen*, 106 Ind. 593: *Holland* v. *Taylor*, 111 Ind. 121; *Bauer* v. *Samson Lodge*, 102 Ind. 262.

It is a general rule that "statements made by the assured in his application for insurance, are not deemed warranties unless they are incorporated in the policy, or are in some appropriate method referred to in that instrument." *Presbyterian Mutual Assurance Fund* v. *Allen, supra; Commonwealth's Ins. Co.* v. *Monninger*, 18 Ind. 352; May on Insurance, section 156; Bliss on Life Insurance, section 34.

The certificate issued in this case makes no mention of, or reference to, the application, nor does the application itself contain any intimation that the facts stated therein are intended as, or are to be considered as, warranties.

Clearly, so far as appears from these instruments, there is no warranty.

It is endeavored to impose upon the statements in the application the character of warranties by virtue of the provisions in the constitution concerning applications, viz.:

"Section 39. The application shall be a warranty of the truth of all the facts therein stated."

To accomplish this, counsel invoke a well-established principle that members of an order are bound by, and must be held to, knowledge of the constitution and by-laws of the association.

It is well settled, as a general rule, that all members of such beneficial orders must take notice of the by-laws and constitution of their order, and must be governed by them in all their dealings with it as members thereof. This rule will not, however, enable the order to give to the plain language of the written application, executed before the party becomes a member, a construction of which it is in itself not susceptible.

The order can not thereby interpolate into the application as the act of the applicant, something which he has not placed there. It can not, by virtue of such provision, hold one who is not yet a member, but is simply proposing to become one, to have said that which he did not say, and then hold him liable therefor as though he had said it.

By reason of their stringent character, warranties are not favored in law. The courts will only construe as a warranty that which the parties have plainly and unequivocally declared to be such. *Northwestern Mutual Life Ins. Co.* v. *Hazelett*, 105 Ind. 212; *Rogers* v. *Phenix Ins. Co.*, 121 Ind. 570; *Pennsylvania Mutual Life Ins. Co.* v. *Wiler*, 100 Ind. 92.

Fair dealing would require that if an applicant's statements are to be held against him as warranties, he should, by the terms of the instrument which he signs, be plainly advised of what was intended, so that he may know that even an unintentional deviation from the fact is to prevent his beneficiary from receiving the proceeds of the insurance.

Instead of giving to the rules of the order so harsh and unfair a construction, courts should construe them liberally in favor of the beneficiaries who are intended to be aided by it. *Supreme Lodge K. of P.*, etc., v. *Schmidt*, 98 Ind. 374; *Supreme Council American Legion of Honor* v. *Perry*, 140 Mass. 580.

When critically examined, the statement as to Margretta, does not seem such an one as should be deemed either a warranty or a material representation.

In *Standard Life*, etc., *Ins. Co.* v. *Martin*, decided by our own Supreme Court, 33 N. E. Rep. 105, the question is decided adversely to appellant's claims. In that case the statements of the application were expressly made warranties, and yet the Supreme Court says of this language in the application:

"Write policy, payable in case of [my] death by accident under its provisions, to Mrs. Fred. Martin, whose relation to me is that of wife." "We think this statement is neither a warranty, nor a material representation. It was merely an indication of the person to whom the policy was to be payable in case of death."

In *Britton* v. *Supreme Council of the Royal Arcanum* (N. J.), 31 Am. and Eng. Corp. Cas., 189, the applicant made one Brennan "related to me as cousin," a beneficiary, with an agreement that any untrue or fraudulent statement should forfeit rights under the membership. Brennan was no relation in fact. The court held that there was neither a warranty nor a material representation.

In *Vivar* v. *Supreme Lodge, K. of P.*, 52 N. J. Law Rep. 455, the application directed payment to "my wife Emily Louise Vivar." She was not his wife, but the court held that there was neither warranty nor material representation. It is said, "Courts do not favor warranties by construction, and hence parties will not be held to have entered into the contract of warranty unless they clearly appear to have intended it."

The Supreme Lodge, Ancient Order United Workmen, *et al. v.* Hutchinson.

It is true that in this case there was a general power of naming the beneficiary. We see no difference in principle, however, so long as the beneficiary named comes within the permitted classes, because within those classes the right of the member to select the beneficiary is just as absolute as where there is an unlimited power of selection.

In *Durrian* v. *Central Verein*, 7 Daly, 168, the description of the beneficiary as his wife, when he was simply living with her as such, was held not to avoid the certificate.

The representation, if it is to be construed as one, was plainly not material to his admission to the order, nor relied on as such, because the relationship is only required to be given as a mere incidental matter for the purpose of naming the beneficiary. The relationship of the benficiary had nothing to do with this member's admission into the order. It is not one of the matters which are to be considered in connection with his qualifications as a member.

His relations to appellee could only affect his moral fitness to become a member, and as to this the order does not ask the applicant to speak for himself. It does not rely upon, nor call for, his own statements as to his moral qualifications. As to these its members seek information elsewhere, and judge for themselves.

If he had named his children as beneficiaries, the order would not have asked for any information concerning the wife.

The concealment of his misdeeds by the deceased, and his failure to disclose to the order the wrong doings of his past life, would not operate as such a legal fraud upon the order as to justify it in refusing to pay his certificate, after accepting him as a member and collecting dues and assessments from him until his death. *Story* v. *Williamsburgh Masonic Mutual Benefit Ass'n.*, 95 N. Y. 474.

The order does not, as we have already indicated, depend upon, nor call on, the applicant for his moral qualifications. The members determine them when they ad-

mit him, and this determination stands until it has been revoked by some method known to the laws of the order in the life-time of the member. If applicants for admission were required to make confession of all the misdeeds done in the body, there might be but few found worthy. The laws of such orders usually provide for punishment of moral delinquencies, and the mode thus provided must be followed, unless, indeed, the result to follow any particular act be expressly ascertained by the terms of the contract itself.

The reasoning of the Supreme Court of Illinois, in *High Court I. O. Foresters* v. *Zak*, 26 N. E. Rep. 593, is applicable:

"If these societies were allowed to prove, after a member's death, that he had committed certain unworthy acts, and that those acts were known to the other members, and that thereby his good standing had been ended, the temptation to avoid or contest the payment of death losses would oftentimes be too great to be resisted."

We next come to the consideration of the respective rights of Emma and Margretta Hutchinson.

The certificate does not, by its terms, provide for payment to Emma Hutchinson. Upon its face she does not appear as a beneficiary. There is no provision of the constitution making the fund payable absolutely and primarily to the widow of the deceased member, as is in some societies the case. Emma Hutchinson, then, who is the widow, can not, in any event, take the benefit of the certificate, unless it is not permissible for the person named to take. Whether or not she would then be entitled to it, we are not now called upon to determine.

By the law of the order three classes of beneficiaries are established: Members of the family, relations by blood, and those dependent upon the member.

Within these classes there is no limitation upon the right of selection by the member. So long as he keeps within these classes there is nothing to indicate that the order has

any concern or interest in, or control over, the selection of the beneficiary.

Margretta Hutchinson sustained to the deceased the actual, but not the legal, relation of wife. She was not his wife, and could not take as such. She was, however, in her relations with him entirely innocent of any wrong intent, and, being innocent, no principle of public policy can intervene to prevent the courts giving to her that to which she is otherwise entitled. This certificate is no more tainted with evil in her hands than in the hands of the lawful wife.

While Margretta was not the wife, she was a dependent upon the deceased, and she had at. least a moral, right to look to him for support; she and her children were, in fact, dependent upon him; he owed to her and them a duty which was in part performed by taking out this certificate payable to her. While it was not lawful for him to live with Margretta, it was eminently lawful and proper that he should provide for the support of herself and children, after he had wronged her so grievously.

"We think the true meaning of the word 'dependent' in this connection means some person or persons dependent for support in some way upon the deceased." *Ballou v. Gile, Admr.,* 50 Wis. 614.

"The beneficiary must be dependent upon the member in a material degree for support, or maintenance, or assistance, and the obligation on the part of the member to furnish it must rest upon some moral, or legal, or equitable grounds." *McCarthy v. New Eng. Order of Protection* (Mass.), 26 N. E. Rep. 866.

In *Keener v. Grand Lodge A. O. U. W.,* 38 Mo. App. 543, this language is used:

"I would not restrict dependents to those whom one may be legally bound to support, nor, yet, to those to whom he may be morally bound, but the term should be restricted to those whom it is not unlawful for him to support. It is

not lawful to support a woman *knowingly* occupying the illicit relation in which interpleader places herself."

The case of *Story* v. *Williamsburgh Masonic Mutual Benefit Ass'n, supra,* meets every feature of the case in hand except that relating to the warranty.

In that case the member was married, but lived with another woman as his wife, joined the association and received a certificate payable to "Mary Story, his wife," although she was not his wife. The court says:

"The non-disclosure by Story of the prior marriage was not a fraud upon the society. Its obligation was not in any way enlarged by making the plaintiff the beneficiary. Nor did the appropriation of the fund for her benefit contravene the policy or objects of the association.

"The plaintiff for sixteen years lived with Story, believing herself to be his lawful wife. They had children depending upon them for support. It was a case where it was the duty of Story to provide for them, and the provision he made through this insurance was in entire accord with the objects of defendant's organization."

And upon this ground expressly the judgment in favor of the plaintiff was affirmed.

Counsel for appellant Emma Hutchinson, in an able and exhaustive argument, press upon our consideration several cases, to which we have given attention.

In *Grand Lodge, Order of Hermann-Soehne,* v. *Elsner,* 26 Mo. App. 108, and in *Bolton* v. *Bolton,* 73 Me. 299, the benefit fund was by the terms of the laws of the order payable to the "widow." The lawful wife alone could become his widow, and upon that ground she recovered it.

In *Keener* v. *Grand Lodge, A. O. U. W., supra,* and in *Eq. Life Ass. Co.* v. *Patterson,* 41 Ga. 338, the beneficiary named knowingly occupied the position of a mistress.

In the case of *Supreme Lodge Am. Legion of Honor* v. *Green,* 71 Md. 263, there was an express agreement in the member's application making the statements warranties, and a

false statement, as the court held, of the relationship of the beneficiary to him. The truth of the fact being expressly warranted, the court held that the certificate failed by reason of its falsity. If there is to some extent a conflict between these last two cases and others cited, we have preferred that rule which seems to us most in harmony with the principles of justice and equity, giving the insurance money to the one for whom it was intended by all the parties to the contract, the one to whom the contract says it should go, she herself being innocent of any wrong.

The judgment is affirmed.

LOTZ, J., did not participate in this decision.

Filed March 29, 1893.