Filed Oct. 9, 1894.

───────────◆───────────

No. 1,022.

THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF THE STATE OF INDIANA v. KING.

LIFE INSURANCE.—*Complaint, Sufficiency of.*—*A. O. U. W.*—*Nonpayment of Assessments.*—*Suspension or Forfeiture.*—*Reinstatement.*—*Conditions.*—Where the complaint of a beneficiary alleged that her insured, a member of the A. O. U. W., carrying a life policy for $2,000, was suspended for nonpayment of assessments, and the by-laws provide that such member, if living, "may renew the same at any time within three months from the date of the forfeiture, provided: 1st. All assessments that have been made during that time shall be paid. 2d. This fact shall be reported to the lodge at a stated meeting. 3d. The lodge shall, by a majority vote, declare said certificate renewed," and the complaint shows that the insured performed all the conditions on his part to be performed to effectuate such renewal and reinstatement, except where performance was rendered impossible by the act of the defendant, and the insured died under such circumstances, the complaint states a cause of action on the policy, and was sufficient on demurrer.

SAME.—*Suspension of Member.*—*Reinstatement.*—*Tender of Dues and Assessments.*—*Refusal.*—*Right of Recovery.*—Where, in such case, the financial officer of the subordinate lodge of which the insured was a member refused to accept money in payment of all the insured's dues and assessments then due, because the insured was then in a dying condition, and reported the same to the lodge at a stated meeting, and no action was taken thereon by the lodge, the suspension having been rightful, the right of the insured to reinstatement was not absolute, but qualified, depending upon the affirmative action of the lodge; and had the financial officer accepted such assessments and dues, the lodge would not have been compelled to reinstate him, such act being a discretionary one vested in

the members of the lodge, and, under such circumstances, the beneficiary can not recover on the policy.

From the Vanderburg Superior Court.

*C. L. Wedding*, for appellant.

*P. W. Frey*, for appellee.

DAVIS, J.—This was an action instituted by appellee against appellant. In the court below, appellee recovered judgment for two thousand one hundred and three dollars and thirty-three cents.

The material facts alleged in the complaint are:

That on the 21st day of November, 1890, appellant issued to Henry King a certificate for two thousand dollars, payable to appellee, his wife, at his death, "on the condition that said Henry King shall in every particular comply with all the laws of said order;" that at the time of issuing said policy or certificate, appellant's constitution contained, among other things, the following provision:

"Any member who renders void his policy by reason of the nonpayment of assessments thereon, may, if living, renew the same at any time within a period of three months from the date of the forfeiture thereof; provided:

"1st. All assessments that have been made during that time shall be paid.

"2d. This fact shall be reported to the lodge at a stated meeting.

"3d. The lodge shall, by a majority vote, declare said certificate renewed.

"When all these conditions have been complied with, the beneficiary certificate shall be held as renewed and in full force, and not before."

That prior to the 24th day of February, 1891, and in that year, Henry King failed to pay certain assessments

within the time specified by the laws of the order, to wit, before the 28th day of January, 1891, and that on the 24th day of February, 1891, the appellant notified him, in writing, that by reason of such nonpayment of said assessments he was suspended, and after calling his attention to the provisions of the constitution hereinbefore quoted, stated that the money due from him, as one of the conditions of his reinstatement, must be deposited with John Beatty, the financier of his lodge, who would hold the same pending the action of the lodge; that this notice, which it is alleged was sent by appellant, but which purports to have been written by the grand recorder, was the only notice of assessments or suspension said Henry King ever received, and that immediately upon the receipt of said notice the said Henry King tendered, in money, to, and offered to deposit with, said John Beatty the full amount of all said assessments and additional assessments named in said notice, and that said Beatty then and there refused to receive the same and declined to accept said deposit, whereby King was deprived of the right to apply for a reinstatement in said lodge, and the vote of said lodge on his reinstatement; that after said tender and offer, and before the death of said Henry, there was a stated meeting of said lodge at which said Henry might have been reinstated, and that he died on the 2d of March, 1891,'' etc.

A demurrer to the complaint was overruled. This ruling is assigned as one of the errors we are required to consider.

It is not alleged that the grand lodge failed in any respect in giving notices of said assessments. In fact there is no averment in the complaint that the grand lodge was required to give any notice of the assessments. On the contrary, it is conceded in the complaint that on

account of the failure to pay the assessments prior to the 28th day of January, 1891, said King had forfeited all his rights as a member of the Ancient Order of United Workmen, and that he stood suspended from all the rights, benefits and privileges of the order from and after that date, subject only to the right of being reinstated on the conditions heretofore stated. It is not charged that he was unjustly suspended.

The theory of counsel for appellee, as we understand it, is that after King's suspension all he was required to do in order to secure his reinstatement was to tender the amount of all dues and assessments to the financier of the subordinate lodge, in pursuance of the directions of the grand lodge, within thirty days after his suspension; that in fact all that King could do was to offer to pay; that the refusal of the financier to receive the money, under the circumstances alleged in the complaint, deprived him of the right to apply for a reinstatement, and also of the vote of the lodge on his reinstatement, and that, therefore, on his death, the appellee was entitled to recover the amount of said policy in all respects the same as she would have been if King had been actually reinstated by an affirmative vote of the lodge at a stated meeting.

It is not alleged that if the money had been accepted and the fact of its payment reported to the lodge, King would have been reinstated by an affirmative vote of a majority of the members of the lodge present at such stated meeting. The contention is that by reason of the failure of the Grand Lodge, through Beatty, to accept the money when tendered, the appellant has waived the third condition. The general rule is that one who prevents the performance of a condition, or makes it impossible by his own act, can not take advantage of the non-performance.

The demurrer admits that King performed all the conditions, on his part, that were essential to secure his reinstatement, except where performance was rendered impossible by the act of appellant; that is to say, that he tendered the money in payment of his dues and assessments to the agent designated by appellant to receive the same, and that his failure to accept the money prevented compliance with the other requirements.

In our opinion, there was no error in overruling the demurrer to the complaint.

The other error assigned is that the court erred in overruling the motion of appellant for a new trial.

It is insisted that the evidence does not sustain the verdict.

It appears from the evidence, that the certificates issued by the grand lodge are payable out of the beneficiary fund, composed of admission fees and proceeds of assessments made from time to time upon the members of the subordinate lodges. The constitution and by-laws of the order provide that the assessments shall be made on the first day of the month by the grand lodge; and that notice of the same shall be given by the grand recorder to the subordinate lodge; and that the financier of the subordinate lodge shall deliver personally or mail to the last-known post-office address of each member a copy of the notice of assessment on or before the eighth day of the month; and that any member failing or neglecting to pay all assessments made upon him to the financier of the lodge of which he is a member on or before the twenty-eighth day of the month in which the assessments are made, shall forfeit all his rights as such member, and shall stand suspended from the rights, benefits and privileges of the order from and after that date.

The suspension of King, the section of the constitution in relation to the reinstatement of suspended mem-

644    APPELLATE COURT OF INDIANA,

The Grand Lodge of the Ancient Order of United Workmen v. King.

bers, and the letter written by the grand recorder of the grand lodge to King, are substantially correct, as set forth in the former part of this opinion.

In this connection it is proper to state that the grand lodge does not seem to be clothed with any powers or duties in relation to the collection of assessments or the reinstatement of suspended members. These appear to be matters entirely within the jurisdiction of the subordinate lodges. The constitution provides the method to be pursued in such cases, in collecting the assessments from the members by the subordinate lodge, and also the course to be pursued in order to secure reinstatement, which is, that upon payment of all dues and assessments the suspended member may be reinstated by the affirmative vote of the subordinate lodge of which he was a member prior to his suspension.

It further appears from the evidence, that on or about the fifteenth day of February, 1891, said Henry King was taken seriously ill, and that he died on the second of March ensuing. During his last sickness, and on the receipt of the notice of his suspension, sent him by the grand recorder, on the evening of [February 26th, and just before the subordinate lodge of which he had been a member opened, the members having gathered in the lodge-room, a friend of King, at his request, offered to pay to said Beatty, the financier of said lodge, all of King's assessments and dues, which was refused by Beatty because King was in a dying condition. On the opening of the lodge on that evening for the transaction of business, Beatty reported to the lodge the offer that had been made to him, as such financier, in behalf of said King, to pay his dues and assessments, and that he had refused to accept the money because of the fact that King was on his death-bed, but no action was taken in relation to the matter on his report by the lodge.

One subdivision of the section of the constitution, in relation to assessments, suspensions and reinstatements, reads as follows: "The officers of subordinate lodges shall be, and are, agents of the members of the lodge to which they belong in the transaction of all official business required of them by this section, and are not the agents of the grand lodge."

In speaking of the effect of such provision on the rights of the members, in *Supreme Lodge, A. O. U. W.*, v. *Hutchinson,* 6 Ind. App. 399, Judge GAVIN says: "Counsel invoke a well established principle that members of an order are bound by, and must be held to, knowledge of the constitution and by-laws of the association. It is well settled, as a general rule, that all members of such beneficial orders must * * be governed by them in all their dealings with it as members thereof."

Now, on the facts and under the circumstances, what are the rights of the parties?

King was not suspended by any affirmative action of the lodge. He was suspended by operation of law of the order. After his suspension, because of the failure to pay his assessments, he did not have an absolute and unconditional right to be reinstated. He had the right, on the payment of all dues and assessments against him, including assessments made during the time of his suspension, to have the question as to whether he should be reinstated submitted to the lodge of which he was a member prior to his suspension. It may be conceded that it was the duty of Beatty, the financier, to accept the money when tendered, and to report the payment to the lodge at its stated meeting on that evening. If the money had been so accepted and reported it would have been the duty of the lodge to exercise a sound discretion in voting on the question whether he should be reinstated.

The question is whether appellee has any remedy against the grand lodge for the failure of the financier of the subordinate lodge to do his duty? This, we apprehend, depends on whether Beatty can be regarded in this instance as the agent of the grand lodge.

There is no provision in the constitution or by-laws, so far as our attention has been called thereto, requiring any such notice as that set out in the complaint, which was sent to King by the grand recorder of the grand lodge in relation to his suspension, and the steps necessary to be taken in order to become reinstated. This notice, and the instructions therein contained, so far as disclosed by the evidence, were voluntary, as an act of courtesy on his part, and without authority of the grand lodge. It is not shown by any evidence that the grand lodge had any power in relation to the reinstatement of suspended members. Neither does it appear that the grand recorder had any authority to appoint agents to act for the grand lodge in the performance of any duties in the reinstatement of suspended members. Moreover, it does not appear that the grand recorder attempted to appoint any such agent. He only called attention to the fact that King had been suspended, set out the conditions on which he could be reinstated and notified him that the dues and assessments should, in the first place, be paid to the financier of his lodge. The notice only mentioned what was necessary to be done without the notice in order to secure a reinstatement. The notice did not propose to change the constitution or the usual method of procedure in such cases. In our opinion the notice and instructions of the grand recorder are not, under the circumstances, when construed in the light of the provisions of the constitution, wherein it is expressly provided that the financier is not the agent of the grand lodge, sufficient to warrant the inference that Beatty was

acting as the agent of the grand lodge when he refused to accept the money tendered him in behalf of King.

If Beatty had taken the money, and the subordinate lodge on the facts being reported had failed to reinstate King, could appellee have recovered the amount of the certificate in an action against the grand lodge? It does appear that Beatty reported the fact that he had declined to receive the money, to the lodge, and that the lodge took no action in relation to the matter. This is a strong circumstance, to say the least of it, tending to show that the lodge acquiesced in the action of Beatty. In any event there is nothing in the evidence in the record tending to indicate that if he had accepted the money the lodge would have voted to reinstate King. It is true the lodge might have done so. The fact that King was then in a dying condition would not be a sufficient reason for a conclusive presumption that the lodge would not have voted to reinstate him. However this may be, he was not reinstated. The money was not accepted by Beatty, and a majority of the members of the subordinate lodge who were present at that stated meeting did not vote for his reinstatement. There is no evidence tending to prove that the grand lodge is responsible for either the refusal of Beatty or the failure of the subordinate lodge to comply with the conditions necessary to secure his reinstatement.

It is not strictly correct, in our judgment, to say that Beatty was in this instance acting as the agent of King. He was, more properly speaking, on this occasion, acting as the agent of the subordinate lodge. In other words, he was the officer selected by the subordinate lodge to act for it in collecting the dues and assessments from the members, but under and pursuant to the provision of the constitution, it was expressly provided that, as between the member and the grand lodge, such officer, in

the transaction of all the official business required of him in relation to the reinstatement of suspended members, should be regarded as the agent of the member, and not the agent of the grand lodge.

If King was rightfully suspended, a tender by him, to the financier, of the proper dues and assessments, the report of such tender to the lodge, at a stated meeting, whether accepted or not, and the affirmative vote of the members of the lodge in favor of his reinstatement, would have been effective to reinstate.

If he was wrongfully suspended, then all he was required to do to preserve the rights of the beneficiary under the certificate, was to tender payment of the proper dues and assessments to the financier of his lodge.

So long as he was a member (and he was entitled to all the rights of a member until he was rightfully suspended in accordance with the usages, rules and regulations of the order), all he was required to do to preserve his rights, and the rights of his beneficiary in the certificate, was to pay his dues and assessments to the financier of the subordinate lodge of which he was a member. This officer, we apprehend, could not, while he was a member of the order, have defeated his rights nor the rights of his beneficiary by refusing to accept the dues and assessments on tender of payment thereof by the member within the time prescribed for such payment, but however this may be (and this question we are not required to decide), after his rightful suspension under the provisions of the law of the order because of his failure to pay the assessments made against him within the time prescribed therefor, his rights as such member were forfeited, subject to the power of the subordinate lodge to reinstate him on certain prescribed terms and conditions.

This, as we have seen, was not an absolute right which

he could enforce by his own act, but was a qualified right depending on the affirmative action of the lodge. If his right of reinstatement was absolute and unconditional, then no action on the part of the lodge was necessary. In other words, before his suspension, neither the lodge nor its officers authorized to receive the same could arbitrarily refuse to accept the dues and assessments when tendered by him, and thus forfeit his rights, and after his suspension he could not arbitrarily compel the lodge or its officers to accept the money so tendered, and then reinstate him. In fact, the acceptance of the money by such officer, after his suspension, would not, as we view the rights of the parties, compel the lodge to vote to reinstate him. The power to reinstate the suspended member is, in such cases, vested in the members of the lodge. Whether they shall vote for or against such reinstatement lies in their discretion.

In this case, all the facts in relation to the desire of King to be reinstated and the tender of the payment of the necessary dues and assessments to the financier in his behalf for the purpose of securing such reinstatement, appear to have been fairly presented to the lodge at the stated meeting on that evening, and the lodge, instead of taking any action thereon, seems, by silence at least, to have acquiesced in and approved the act of the financier in refusing to accept the money, and no reason is shown why the courts, in this instance, should do in the interest of his beneficiary what the lodge failed to do for him at that time.

Judgment reversed, with instructions to grant appellant's motion for a new trial.

LOTZ, J., took no part in the decision of this case.

Filed Oct. 11, 1894.