Starr v. Knights of Maccabees.

# BENEFICIAL ASSOCIATIONS—HUSBAND AND WIFE.

### [Lucas (6th) Circuit Court, March 18, 1905.]

### Hull, Haynes and Parker, JJ.

### CLARA A. STARR v. KNIGHTS OF MACCABEES OF THE WORLD ET AL.

**1. WOMAN UNLAWFULLY OCCUPYING RELATION OF WIFE TO ASSURED IS "DEPENDENT" AND ENTITLED TO INSURANCE, WHEN.**

A woman who occupied the relation of wife to a man for a period of twelve years in the honest belief that she was his lawful wife, which relation however was unlawful in that he had a wife living at the time from whom he had never been divorced, is a "dependent" within the meaning of the charter and by-laws of a benefit society which authorizes the designation of dependents as beneficiaries in policies of insurance issued to their members, and is, therefore, as against the lawful wife or the heirs of the assured, entitled to the proceeds of a policy of insurance issued to him by the society without notice of such relation, in which she was referred to as his wife and designated as the beneficiary, notwithstanding the policy was issued after she discovered the unlawful relation referred to.

**2. PERSON MUST BE WITHIN CLASS FOR WHOSE BENEFIT, BENEFIT SOCIETY MAY ISSUE POLICY OF INSURANCE, ETC.**

A person who is not of the class for whose benefit a benefit society is authorized to issue a policy of insurance, cannot legally be made a beneficiary in the policy, or demand the amount payable upon the death of the assured.

**Kohn & Northup,** for plaintiff:

No one can raise the question of the validity of a contract, except a party thereto or some one in privity with him, or the person for whose benefit the contract was made or some one in privity with him, and the plaintiff in error does not come within this rule. *MaGuire* v. *Supreme Council,* 59 App. Div. 143 [69 N. Y. Supp. 61]; *Markey* v. *Supreme Council,* 79 N. Y. Supp. 1069; *Taylor* v. *Hair,* 112 Fed. Rep. 913; *Tepper* v. *Supreme Council,* 61 N. J. Eq. 638 [47 Atl. Rep. 460; 88 Am. St. Rep. 449]; *Young Men's Mut. Life Assn.* v. *Harrison,* 10 Dec. Re. 786 (23 Bull. 360).

The nondisclosure by decedent of the fact that he had another wife living does not vitiate his designation of his second wife as beneficiary. *Story* v. *Mutual Ben. Assn.* 95 N. Y. 474; *Supremé Lodge A. O. U. W.* v. *Hutchinson,* 6 Ind. App. 399 [33 N. E. Rep. 816]; *Crosby* v. *Ball,* 4 Ontario Law Rep. 496; *Carmichael* v. *Mutual Ben. Assn.* 51 Mich. 494 [16 N. W. Rep. 871].

For similar statute likewise construed in this state, see the case of *Young Men's Mut. Life Assn.* v. *Harrison,* 10 Dec. Re. 786 (23 Bull. 360); *Supreme Tent of Knights of Maccabees* v. *McAllister,* 132 Mich. 69 [92 N. W. Rep. 770]; *James* v. *Supreme Council,* 130 Fed. Rep. 1014.

Lucas County.

**M. D. Merrick, J. C. Jones** and **O. W. Nelson,** for defendants:

The statutes, articles of association and by-laws are a part of the contract of insurance. Bacon, Mutual Ben. Soc. Sec. 255; *Gillam v. Dale,* 76 Pac. Rep. 861 (Kan.); *Supreme Lodge Knights of Honor v. Nairn,* 60 Mich. 44 [26 N. W. Rep. 826]; *Wolf v. Grand Lodge,* 102 Mich. 23 [60 N. W. Rep. 445]; *Metropolitan Life Ins. Co. v. O'Brien,* 92 Mich. 584 [52 N. W. Rep. 1012]; *Dietrich v. Relief Assn.* 45 Wis. 79; *American Legion of Honor v. Green,* 71 Md. 263 [17 Atl. Rep. 1048; 17 Am. St. Rep. 527]; *Keener v. Grand Lodge,* 38 Mo. App. 543; *Palmer v. Welch,* 132 Ill. 141 [23 N. E. Rep. 412]; *Alexander v. Parker,* 144 Ill. 355 [33 N. E. Rep. 183; 19 L. R. A. 187].

The defendant in error has no legal right to recover in this case, as she is not an eligible beneficiary by any right or authority. See *Keener v. Grand Lodge,* 38 Mo. App. 543; *Grand Lodge v. Elsner,* 26 Mo. App. 108; *American Legion of Honor v. Green,* 71 Md. 263 [17 Atl. Rep. 1048; 17 Am. St. Rep. 527]; *Supreme Council Catholic Benevolent Legion v. McGinness,* 59 Ohio St. 531 [53 N. E. Rep. 54]; *National Mut. Aid Assn. v. Gonser,* 43 Ohio St. 1 [1 N. E. Rep. 11]; *State v. Mutual Ben. Assn.* 42 Ohio St. 579; *State v. Mutual Relief Assn.* 29 Ohio St. 399; Bacon, Benefit Soc. Secs. 241, 244, 246, 247; *Bolton v. Bolton,* 73 Me. 299; *Elsey v. Mutual Relief Assn.* 142 Mass. 224 [7 N. E. Rep. 844]; *American Legion of Honor v. Perry,* 140 Mass. 580 [5 N. E. Rep. 634]; *Maryland Mut. Ben. Soc. v. Clendinen,* 44 Md. 429 [22 Am. Rep. 52]; *Eastman v. Prov. Relief,* 62 N. H. 555; *Worley v. Aid Assn.* 10 Fed. Rep. 227; *Green v. Green,* 23 Hun (N. Y.) 478; *Duvall v. Goodson,* 79 Ky. 224; *Masonic Relief Assn. v. McAuley,* 2 Mackey 70; *McClure v. Johnson,* 56 Iowa 620 [10 N. W. Rep. 217]; *Ballou v. Gile,* 50 Wis. 614 [7 N. W. Rep. 561]; *Catholic Ben. Assn. v. Priest,* 46 Mich. 429 [9 N. W. Rep. 481]; *Covenant Mut. Ben. Assn. v. Sears,* 114 Ill. 108 [29 N. E. Rep. 480]; *Fenn v. Lewis,* 10 Mo. App. 478; *Addison v. Commercial Trav. Assn.* 144 Mass. 591 [12 N. E. Rep. 407]; *Kentucky Masonic Mut. L. Ins. Co. v. Miller,* 76 Ky. (13 Bush) 489.

If the insured die, naming as his beneficiary a person not authorized to take, the law itself will dispose of the fund for the benefit of the classes named in it. Bacon, Mutual Ben. Soc. Sec. 242; *Palmer v. Welch,* 132 Ill. 141 [23 N. E. Rep. 412]; *Cullin v. Knights of Maccabees,* 77 Hun 6 [28 N. Y. Supp. 276]; *American Legion of Honor v. Perry,* 140 Mass. 580 [5 N. E. Rep. 634]; *Bishop v. Grand Lodge,* 112 N. Y. 627 [20 N. E. Rep. 562]; *Ballou v. Gile,* 50 Wis. 614 [7 N. W. Rep. 561].

## PARKER, J.

It is not worth while to increase the literature of this case very much. The facts of the case are so well set out in the opinion of Judge Tyler, of the common pleas court that I shall adopt his statement thereof. And Judge Tyler has cited and commented upon many of the authorities that counsel rely upon, and with his reasoning and conclusions thereon we are contented. His statement of facts and opinion is as follows:

"This is an action brought by the plaintiff, Clara A. Starr, to recover of the defendant, The Supreme Tent of the Knights of Maccabees of the World, the sum of $1,000 upon a life benefit certificate by it issued to one Charles E. Starr, on March 26, 1895, whereby it promised and agreed to pay the said plaintiff, as Clara E. Starr, at the death of the said Charles E. Starr, one assessment on its membership, not exceeding in amount the sum of $1,000, upon satisfactory proof of his decease, together with the surrender of said certificate, provided he had, in every particular, complied with its laws, then in force or thereafter adopted, and had not obtained his membership by fraud or misrepresentation as to his age, physical condition or occupation.

"The defendant, not denying or desiring to contest its liability, filed an affidavit in this cause, setting forth that one Sarah Styre, without collusion on its part, claimed said sum of $1,000, and that it was ready to pay the same as directed by the court. Upon its motion the said Sarah Styre was required to appear and to assert her claim or be barred therefrom, and it was ordered to pay said sum into this court.

"With that order the defendant has complied, and the cause proceeds as between the plaintiff and the said Sarah Styre, for the purpose of determining to whom the fund now in court shall be paid.

"The said Sarah Styre has filed an amended answer and cross petition and an amendment thereto, which are skillfully drafted and reflect credit upon her counsel. The allegations thereof evidence a thorough appreciation of the legal questions involved, and the plaintiff, by filing a general demurrer thereto, has presented them to the court for adjudication.

"The defendant, the Supreme Tent of the Knights of the Maccabees of the World, is a corporation, incorporated on September 12, 1885, under a law of the state of Michigan which, among other things, provided, 'That any number of persons, not less than five, may become a body corporate and politic, for the purpose of securing to the families, or heirs of any member, upon his death, a certain sum of money, to be paid by such corporation, either out of its funds or by an assessment

made upon the members of such corporation,' and that it should 'only issue certificates or policies payable to the husband, wife, family, heirs, creditors, or assigns of any member.'

"The articles of association of said corporation authorized and empowered it:

" '3. To establish a benefit fund or funds from which, on satisfactory evidence of the death or disability of a member who has complied with all its lawful requirements, the sum of $2,000 in case of death shall be paid to his family, orphans, dependents, or legal heirs, as such member may direct.'

"The rules and regulations of said corporation provided, among other things, as follows:

"Section 174. No beneficiary or life benefit certificate shall be made payable to any person other than the wife, children, dependent, mother, father, sister, brother, aunt, uncle, nephew or niece of the member.

"Section 175. In the event of the death of the beneficiary or beneficiaries named in the certificate of membership before the decease of such member, if no other designation be made, the benefit shall be paid first to the widow, if living; if no widow, to the children; if no children, to the dependents, etc.

"May 25, 1893, the legislature of the state of Michigan enacted a law pertaining to corporations of the class to which the defendant belonged, whereby it was among other things provided that, 'Payment of death benefits shall be made only to the wife, husband, children and dependent children, mother, father, sister, brother, or blood relatives to the fourth degree, of the member;' provided further, that, 'When the laws of any such association already provide that an affianced wife or any other person who is dependent upon the member for maintenance, food, clothing, lodging, or education, may be made a beneficiary, payment of death benefits may be made to such beneficiary, but no certificate of membership shall be made payable to, nor any death benefits be paid to an affianced wife or any beneficiary by reason of dependency as hereinbefore provided, unless satisfactory proof of such affianced relation or dependency shall have been filed with and accepted by the executive officers of such association.'

"On February 15, 1872, the cross petitioner was duly and legally married to one Charles E. Styre, who thereafter assumed the name of Charles E. Starr, and as the issue of such relation, two children were born.

"In the spring of 1875, he wilfully abandoned his family and subsequently, without having procured a divorce from his wife, he married

Starr v. Knights of Maccabees.

the plaintiff with whom he lived and cohabited continuously thereafter until his death, which occurred on February 5, 1904.

"In June, 1894, the said Charles E. Starr became a member of óne of the local divisions of the defendant, known as Maumee Tent No. 9, and on March 25, 1895, the death benefit certificate, upon which this action is based was issued to him.

"In the certificate the plaintiff is described as bearing to the assured the relation of wife, though the defendant had no knowledge of the facts hereinbefore recited.

"Upon these facts the cross petitioner bases the claim that the plaintiff is not within any of the classes of persons to whom the defendant was authorized by law to make payment of the fund; that there was a failure on the part of the assured to designate a lawful beneficiary, and that, under Sec. 175 of the constitution and by-laws, she is entitled thereto.

"Is the plaintiff a legal beneficiary? It will be conceded by me that the person designated as a beneficiary must be one of the class or classes to whom the insurer is authorized by law to pay the fund.

"In *Michigan Mut. Ben. Assn.* v. *Rolfe,* 76 Mich. 146, 151 [42 N. W. Rep. 1094], it is said:

" 'No person who is not of the class for whose benefit the association was authorized can be a beneficiary.'

"To the same effect is *Wolf* v. *Grand Lodge,* 102 Mich. 23, 34 [60 N. W. Rep. 445]; *National Mut. Aid Assn.* v. *Gonser,* 43 Ohio St. 1 [1 N. E. Rep. 11], and many others.

"In *Keener* v. *Grand Lodge,* 38 Mo. App. 543, George Keener, the assured, having a lawful wife, Nellie, abandoned her and thereafter lived with Katie Burke "in an unlawful, illicit and licentious way." During this relation a death benefit certificate was issued him, payable to her as his friend. Subsequently it was surrendered and a new one issued, payable to her as his wife. Thereafter and upon his deathbed they were married. It was held:

"First. The power of the assured is limited to appointment of his beneficiary, and no one not so appointed, is entitled to the fund.

"Second. The appointee must be of the class named in the law which 'brings the association into being.'

"Third. The relation between the assured and Katie Burke was unlawful, illicit and licentious; 'that she was not a dependent or a member of his family.'

"Fourth. That the fund belonged to neither claimant, but, under the by-laws of the association, to the heirs of the assured.

Lucas County.

"In *Carmichael* v. *Benefit Assn.* 51 Mich. 494 [16 N. W. Rep. 871], the beneficiary lived with the assured from her early youth until the latter's death, in old age, when she was thirty-six. She was not related to him by blood or marriage, and the only question involved was: 'Were they of the same family, within the meaning of the statute?' The court held that they were, and says, page 495:

" 'The facts are, that they resided under the same roof, and as constituents of the same social and domestic circle, from her early youth until his death, in old age, and when she had reached the age of thirty-six years. He was never married, so far as appears, and had no other home, and there was no finding that any relatives remained to him. He regarded the plaintiff very much as a daughter, and she treated him with much of the care which that relation would naturally call out.'

" 'These are the conspicuous facts reported by the judge on this point. * * * Now this word 'family,' contained in the statute, is an expression of great flexibility. It is applied in many ways. It may mean the husband and wife having no children and living alone together, or it may mean children, or wife and children, or blood relatives, or any group constituting a distinct domestic or social body.'

"In *Crosby* v. *Bull*, 4 Ont. 496, a benefit certificate was issued to Philip Crosby by this same defendant payable to Mary Crosby, his wife. At the time of their marriage he had a lawful wife living, but Mary did not know of this until some time thereafter, and continued until his death to live and cohabit with him as his wife. The fund was decreed to Mary, upon the ground that her relation to the assured was not illicit, though continued after knowledge of his duplicity; that he was morally bound to support her, and that she was a 'dependent' within the meaning of Sec. 174 of the association by-laws.

"The decision rendered in the case of *McCarthy* v. *Supreme Lodge,* 153 Mass. 314 [26 N. E. Rep. 866; 11 L. R. A. 144; 25 Am. St. Rep. 637], defines the word 'dependent' and holds that a girl engaged to the assured, and who leaves one position to accept another at lower wages upon his promise to pay the difference, is a dependent and may be his beneficiary.

"In *Supreme Lodge* v. *Hutchinson,* 6 Ind. App. 399 [33 N. E. Rep. 816], the assured, representing himself as a widower, was married to Margaretta, who lived with him as such until his death. In fact he had a lawful wife living, whom he had abandoned. It was held that Margaretta, though not his legal wife, was a dependent and entitled to the fund.

"In *Story* v. *Benefit Assn.* 95 N. Y. 474, the assured, having a wife

Starr v. Knights of Maccabees.

then living, married Hannah Wright, with whom he lived until his death. The defendant was the insurer which sought to avoid liability because the plaintiff was not the widow of the assured. The court says, page 476:

" 'We think the instrument of June, 1878, operated as an assent by the association to the appointment of the plaintiff as beneficiary of the fund which should become payable on the death of Robert Story, and entitled her, upon his death, in the absence of any other or different appointment, to demand and receive it. It may be true that the by-law, which prescribes the obligation and duty of the association on the death of a member, contemplated a payment to the person who should be the lawful widow of a deceased member. But this was not a limitation of the power of the company so as to prevent it from recognizing as the beneficiary, a person who might be designated by the member as holding to him the relation of wife. Such designation made during the lifetime of the member and assented to by the company, until changed by the mutual agreement of the member and the company, or at least until the arrangement was repudiated by one of the parties thereto, was binding. The nondisclosure by Story of the prior marriage was not a fraud upon the association. Its obligation was not in any way enlarged by making the plaintiff the beneficiary. Nor did the appropriation of the fund for her benefit contravene the policy or objects of the association. The plaintiff for sixteen years lived with Story, believing herself to be his lawful wife. They had children dependent upon them for support. It was a case where it was the duty of Story to provide for them and the provision he made through this insurance was in entire accord with the objects of the defendant's organization.'

"In *Supreme Tent of K. O. M.* v. *McAllister,* 132 Mich. 69 [92 N. W. Rep. 770], decided by the supreme court of Michigan, Clara Baker, believing herself divorced from her husband, married William McAllister, with whom she lived as his wife, until his death. During the continuance of this relation, and in 1890, a death benefit certificate was issued him, payable to his wife Clara. Upon his death the fund was claimed by her and the decedent's mother, who alleged that there had been no divorce, and that the marriage of her son to Clara was void. The court says, page 771:

" 'The validity of a marriage does not depend upon the good faith of the parties entering into it. Both parties must be competent to contract. Unless both are single, their marriage is void, however innocently they may have entered into that relation. It is not necessary to cite

Lucas County.

authorities to this proposition. But this rigid rule has not been applied in insurance policies of the mutual benefit associations, now so common, where the parties have acted in good faith.'

"The court follows the decision rendered in *Story* v. *Benefit Assn. supra,* also *Supreme Lodge* v. *Hutchinson,* 6 Ind. App. 399 [33 N. E. Rep. 816], and distinguishes *Keener* v. *Grand Lodge,* 38 Mo. App. 543.

"The court further says, page 772:

" 'Though she may have failed to show a valid divorce, we think it not contrary to public policy to permit these mutual benefit associations to issue policies in favor of those occupying such a relation, in the honest belief that they are husband and wife.'

"The decision rendered in the case of *Bolton* v. *Bolton,* 73 Me. 299, I do not regard as pertinent, for the reason that the contract was to pay the widow of the assured, who was not designated by name.

"In the case under consideration, it is not alleged that the plaintiff, at the time she entered into the marriage with the said Charles E. Starr, had any knowledge of his previous marriage with the cross petitioner, and therefore it cannot be said that their relations were illicit or licentious, or that they became so when she discovered the facts.

"By reason of the authorities above cited I am of the opinion that the plaintiff is entitled to the fund and that the demurrer must be sustained."

To this opinion I will add somewhat, chiefly on points not discussed by Judge Tyler.

It may be observed from the mere reading of these by-laws that it is provided by Sec. 174 that only persons bearing certain relationships to the insured may be beneficiaries. That, obviously, is so that this insurance may not be carried on as a mere matter of speculation, which would be against public policy—as some lines of insurance have been carried on, for instance such as has been known as "graveyard insurance." It is so that provision may be made for those in whom the insured has a real interest, and those who are dependent upon him, and who have a real interest in his life.

The following Sec. 175, provides that, "In the event of the death of the beneficiary or beneficiaries named in the certificate of membership before the decease of such member, if no other designation be made, the benefit shall be paid first to the widow" then to the children, and so on down. We think there can be no question but what the person that the insured desired to have receive this insurance was the plaintiff, Clara E. Starr, the so-called second wife. She is named as the beneficiary. It is not insurance running to his wife, but it is insurance

Starr v. Knights of Maccabees.

running to Clara E. Starr described in the certificate as "bearing the relationship to him of wife," and that, we take it, was merely his method of description of the person. The person intended by the insured was the woman he was living with as his wife at the time he took out this insurance, and not the cross petitioner, the abandoned wife. It turned out that this Clara E. Starr was not his lawful wife. She appears to have been innocent of all knowledge of the fact that he had an undivorced wife living, until a few years before this insurance was taken out, and after she had been living with him for upwards of twelve years. Technically the relationship was bigamous, illicit and immoral in the case of the man, but so far as she was concerned it was not so—it was all right and proper.

It is said that when she discovered that she was not his true and lawful wife, good behavior on her part, proper respect for the laws of the country, religion and morality, required of her that she take measures to sever the relation—that she should have quit living with him. We have presented her only the bare bones of the situation—we have not the evidence before us. We do not know what all the circumstances were or might have been. So far as appears, this first wife was entirely content with the severance of the relations of herself and her husband, and so far as she was concerned; she may have been entirely content with his living with this other woman, and there may have been circumstances of their lives and situation that would have made it a great hardship for her to have at that period undertaken to break up the relation that she had entered into in this way. While under the criminal law she might thereafter have been guilty of living with the man in a state of adultery and it would be fair to describe the relationship as illicit—knowingly so— yet in the construction of these rules of beneficial orders the law of life insurance upon the subject is more tolerant of such conditions than the criminal law, and the judge of the court below cited a number of cases in which persons not the lawful wives but made beneficiaries as such were allowed to avail themselves of the benefits of this form of insurance; though we find no case in which it is shown that the person occupying that position was aware that she was not the true and lawful wife.

But, even if not the true and lawful wife, even if the description of Clara E. Starr as a person bearing the relationship to him of wife may not be accurate, may not be true, yet he was authorized, as we find under the laws of the state of Michigan, to insure himself for the benefit of dependents; and it may well be so far as anything appears in these pleadings, that she actually and legally occupied the relationship

to him of a dependent, and would therefore be entitled to this insurance under such description. The person who is to take being made certain by the certificate, the matter of description is not so material, provided she comes within one of the classes on whose behalf he was authorized under the laws of Michigan to take out insurance.

Now it seems to us that there is another reason why it may be said that there is no error of which the plaintiff may rightfully complain, even though Clara E. Starr may not be entitled to this money. It seems to us entirely clear that in any event Sarah Styre could not recover this money; that she has no interest in it; that if it did not go to Clara E. Starr it would not go to the plaintiff. To test her right we must look at the situation as it would be if she were undertaking to enforce payment of this policy to her by the insurer, and as if Clara E. Starr were not here to controvert her claim at all; or as if the insurer had paid the claim to Clara E. Starr without taking Sarah Styre into consideration, and then Sarah Styre should come in and assert her claim. And we cannot see that under the laws and rules of the association as we have them before us here in these pleadings, Sarah Styre is entitled to any of this fund. She is not named or described as a beneficiary; she is not the person intended.

But it is urged that if the money may not be lawfully paid to Clara E. Starr, then there is a failure to designate a beneficiary to whom the money may be lawfully paid, and that in that event it should go to the other persons having this insurable interest, in the order named in the rule, to wit, to the wife, the children, dependents, father, mother, sisters, etc. We find no provision in the certificate of the association or in any statute governing the matter, to the effect that if the insured fails to designate a beneficiary, or if the beneficiary named is not qualified to take (that is, the one named and designated by the insurer as occupying a certain relation, does not occupy such a relation) the insurance shall then inure to the benefit of the widow or to the heirs or the estate, or to some other person. The rules provide for such a devolution only in the event of the death of the beneficiary named by the member occurring before the decease of such member, and we know of no rule or authority for saying that the failure to designate a person as beneficiary, or the designation of a person not qualified to take, shall amount to the same thing in law as death of the named beneficiary, in the lifetime of the insured.

The rights of the parties are contractual; they depend upon the contract, and the order has not promised by this certificate that if no person shall be named as beneficiary, or if the person named shall be dis-

Starr v. Knights of Maccabees.

qualified to take, the benefit shall go to certain other persons; and we know of no statute of Michigan providing, and no rule of law to the effect that the policy shall receive that construction or shall be enforced in that manner. Our view of the matter is, that if it should turn out that there is no person authorized to take, the insurance would lapse and the fund would go back to the insurance company. Sarah Styre has no claim that she may enforce in apposition to the claim of Clara E. Starr and has no standing to oppose payment to the latter on grounds of morality or public policy. She does not represent the state or the general public in this matter. Neither do we find that there is such an objection on the ground of morality or public policy to the payment of this insurance to Clara E. Starr as should move the court to interfere *sua sponte* and prevent such payment.

It is suggested in the brief of plaintiff in error that there are certain authorities in Michigan holding that where there is no beneficiary named in the certificate qualified to take, the fund goes to the heirs. It appears that in the case of *Wolf* v. *Grand Lodge*, 102 Mich. 23, 34 [60 N. W. Rep. 445], it is stated that it was so held in the case of *Michigan Mut. Ben. Assn.* v. *Rolfe*, 76 Mich. 146 [42 N. W. Rep. 1094]; but upon looking at the case last mentioned we find that there the policy provided that the fund was to go first to the wife, and second, to the heirs, and so on. That is, the construction put upon it by the court.

The heirs are designated as the persons to whom it shall go in the event that the wife does not survive to take the insurance, and the question raised and controverted there was whether by the heirs named in the certificate, was meant those of the beneficiary, (the wife), or the heirs of the insured; and the court held that it meant the heirs of the insured; and one reason given was, that the heirs of the beneficiary would not be qualified to take under the laws of the state; that under the rules of the order they could not have been insured unless they sustained certain relations to the insured, and in that case they did not; and it was said that the beneficiary named had no vested interest in the insurance until after the death of the insured, and as she died before the insured died, having no vested interest, nothing would devolve from her upon her heirs. This case of *Wolf* v. *Grand Lodge, supra*, though it arose in Michigan was controlled largely by the laws of Illinois, and it was held in that case that the person claiming that fund was entitled to have it, and it was given to such person because she was designated to receive it; and it seems that under the statutes of Illinois she might take it although not of any of the classes named as beneficiaries in the rules of the association, because the statute of Illinois per-

Lucas County.

mitted one of her class to take, and the rules of the association would not be permitted to defeat the policy of the statute. That was the real question involved in that case.

We hold, therefore, with the court of common pleas, that this plaintiff was entitled to receive this fund, that is, as between her and the cross petitioner. What her rights might have been had the insurance company undertaken to defend against her claim, we are not called upon to say; what her rights might have been if some one representing the state should intervene we are not called upon to say. We simply say that Sarah Styre is not in a position to intervene to prevent the payment of this fund to the plaintiff; we hold with the common pleas court upon the ground that the judge has stated, and upon the further ground that Sarah Styre had no right and no standing to intervene to prevent the payment of the money to the plaintiff. The judgment of the court of common pleas is affirmed. The question of costs has been overlooked and we will have to take that subject up at another time.

**Hull** and **Haynes, JJ.,** concur.