### SCHIEFER v. UNITED STATES et al.
#### No. 3976.

District Court, W. D. New York.
Aug. 3, 1931.

Saperston, McNaughtan & Saperston, of Buffalo, N. Y., for plaintiff.

Richard H. Templeton, U. S. Atty., and Justin Morgan, Asst. U. S. Atty., both of Buffalo, N. Y. (A. S. Thomson, Regional Atty., Veterans' Administration, of Buffalo, N. Y., of counsel), for the United States.

THOMAS, District Judge.

This case has been submitted for decision upon the pleadings, the stipulation, and the briefs.

Amelia M. Sweet Schiefer individually and as administratrix of the estate of Leonard S. Sweet, deceased, brings this suit against the United States and Mae Amelia Sweet, her daughter, and one Hattie Frances Sweet. No relief of any kind is demanded by the plaintiff against any defendant other than the United States, and nothing is demanded against the United States other than a judgment for a sum of money. Judged then by the usual criteria, the suit must be one at law. No rights of any kind can be determined here except the plaintiff's alleged right to recover a sum of money against the United States.

The complaint, which, for some reason or other not disclosed, is called the "petition," alleges that the plaintiff married Leonard S. Sweet in Buffalo on October 7, 1910; that the marriage was never dissolved but continued in full force and effect until his death; that he enlisted in the armed forces of the United States on April 26, 1918; that on May 1, 1918, he applied for and was granted insurance in the sum of $10,000; that he was killed in action and died intestate on October 31, 1918; and that he paid the insurance premiums up to the time of his death.

From the stipulation entered into by the parties it further appears that Sweet, the soldier, in his application for insurance designated as his wife Hattie Frances Sweet of Cleveland, Ohio, beneficiary. Following the soldier's death she, as the named beneficiary, was notified and applied for the insurance money as the named beneficiary and accompanied her application with the affidavits of identifying witnesses and the certificate of the clergyman showing the marriage of Leonard S. Sweet and Hattie Frances Lemparcyk of Cleveland, Ohio, on April 25, 1918.

It is further stipulated that payments by the United States Veterans' Bureau were made to Hattie Frances Sweet only because of the statement in the soldier's application for insurance that she was his wife and beneficiary. The above-mentioned proofs, it is stipulated, substantiated the right to pay Hattie Frances Sweet until the claim of this plaintiff came to the attention of the Veterans' Bureau on February 3, 1928, nearly ten years after the insurance was written.

It is also stipulated that the plaintiff and the deceased soldier, who were married in October, 1910, separated during 1912 and the plaintiff did not thereafter know the whereabouts of her husband until informed by her father-in-law, Ralph Sweet, during the spring of 1927 that the soldier had been killed in service on October 31, 1918. From the stipulation it further appears that the plaintiff, on October 11, 1921, married one Jacob Schiefer and told him that she had been previously married; that at the time of her marriage to Schiefer it now appears that she, in truth and in fact, did not know whether Leonard S. Sweet was dead or alive and had no definite knowledge of that fact until informed as above stated.

It is also asserted in the stipulation that the amount which has been paid to this plaintiff by the United States Veterans' Bureau on account of said war-risk insurance is $1,266, and that $5,980 has been paid to said Hattie Frances Sweet; that the United States Veterans' Bureau has also paid Hattie Frances Sweet $2,754 on account of death compensation as the widow of the deceased soldier. It is further stipulated that the United States does not contest the right of the plaintiff to recover herein said amount of $2,754.

The precise theory of the plaintiff's claim is nowhere formulated. Paragraphs 18 and 19 of the complaint allege that Sweet, at the time of his death, was a resident of Ohio, and that under the laws of Ohio the plaintiff would be entitled to the sum of $400, sufficient for the support of herself and child for one year, and one-third of the residue; and that Mae Amelia Sweet would be entitled to the balance of the residue upon administration of the estate. Nevertheless, the plaintiff, suing individually as well as in her capacity as administratrix, demands judgment for $8,734, which is the difference between $10,000 (the face of the policy) and $1,266 (the amount already paid to her).

As, however, the case was submitted on the pleadings and stipulation of the facts, and as paragraphs 18 and 19 of the complaint are denied in defendant's answer, and as the stipulation is silent as to the matters alleged in those two paragraphs, I am constrained to the conclusion that the law of Ohio has not been proven, and that whatever rights the plaintiff may have in the premises must be such as she derives from her status as administratrix.

It is claimed, then, that the decedent could not, lawfully, have designated Hattie Frances Sweet as his beneficiary because she was not, in fact, his legal wife; that under the provisions of section 514, title 38 of the Code (38 USCA § 514), which provides that if no person within the permitted classes be designated as beneficiary the insurance shall be paid to the estate, the plaintiff as administratrix is lawfully entitled to this money. The United States claims an estoppel operative against the plaintiff arising out of the misrepresentation of the decedent which misled the United States into paying this insurance money to the person alleged by him to be his wife.

Into the marital history of the decedent it is unnecessary to go. Suffice it to say that there is nothing in the record which impugns the good faith of either of the two women whom he married. This much is obvious, Leonard S. Sweet did not effect insurance for the benefit of his first wife; at least, his intent was quite the contrary. Whether Hattie Frances Sweet could or could not lawfully have been designated as his beneficiary, the fact is that he did so designate her, and it is also true that he, and not the plaintiff, paid the premiums to keep the insurance in force. As far as it may lawfully be accomplished, that intent must be given full force and effect and such compulsion proceeds from the rules which govern the construction of the language of contracts as well as of testamentary dispositions. Ambrose v. United States et al. (D. C.) 15 F.(2d) 52; State Bank & Trust Co. v. United States (C. C. A.) 16 F. (2d) 439.

In the latter case an action was brought by the guardian of an illegitimate son who was named as the beneficiary. Commenting on the claim made by the administratrix who had intervened in the suit, the Circuit Court of Appeals for the Sixth Circuit, speaking by Judge Denison, said on page 440 of 16 F. (2d): "This reasoning assumes that such insurance as this is property, in the ordinary sense, which would pass to children unless diverted; but in truth it is nothing which ever existed for their contingent future benefit; the taking of it by the soldier was voluntary on his part; he created it for the purpose of benefiting this plaintiff. This is not only true generally with regard to all such insurance, but the proofs here make it clear that he never would have taken this policy for the benefit of his legitimate children. To take its proceeds away from the intended beneficiary and give them to the other children is to thwart the soldier's purpose, and to compel the application of his premium payments against his will. These results may follow, because they must if the law is sufficiently clear; but there is no reason for any particular liberality in construction or in application of legal rules to accomplish them."

In the case of United States v. Robinson (C. C. A.) 40 F.(2d) 14, a second wife named as beneficiary on such an insurance application brought suit against the United States. The second marriage was illegal because the first marriage had not been dissolved. The first wife was brought in and the suit resolved itself into one of interpleader. I am not quite certain of the interpretation I am to place upon the decision in that case. The fact is that in the District Court judgment [33 F.(2d) 545] went in favor of the second wife, which was modified by the Circuit Court of Appeals, so that both wives shared equally in the proceeds of the policy.

It is true that in the case of Cummings v. United States (D. C.) 34 F.(2d) 284, the intent of the soldier was frustrated. However, in that case the woman whom he had named as his wife was at fault. She had been previously married and at the time of her marriage to the soldier the first marriage had not then been dissolved.

I am therefore of the opinion that a woman free to marry and who, in good faith, married a soldier without notice or knowledge of any legal incapacity on his part to enter into marriage with her, is, within the meaning and intendment of the congressional acts governing war-risk insurance, his wife when as beneficiary she is named as such in his application for insurance. Until higher authority constrains me to a different conclusion, I shall not assume that Congress intended to heap injury upon insult and to further penalize an innocent woman who had been defrauded into a void marriage.

I am of the opinion that an estoppel in pais exists here which may be asserted

against the plaintiff in her representative capacity. The deceased soldier had named a certain woman as his wife and the United States knew naught to the contrary. By reason of the representation thus made the United States paid the claimed insurance to this woman. It seems to me elementary that had Leonard S. Sweet been alive, he would have been estopped from asserting against the United States a claim for moneys which had been paid out at his direction; and his representative takes his rights subject to whatever defenses would have availed against him.

The stipulation between the parties herein before referred to embodies the following provision: "The United States of America does not contest the right of plaintiff to recover herein said amount of Two Thousand Seven Hundred and Fifty-Four ($2754.00) Dollars."

When the court discovered that assertions in the defendant's brief were at variance with this provision of the stipulation, the attention of counsel on both sides was directed to the inconsistencies of the brief and stipulation. They then submitted a further stipulation which reads: "The Court may disregard that part of defendant's brief questioning the right of plaintiff to recover the sum of $2754.00, which right it has been stipulated is not contested by the defendant." I interpret this stipulation to mean that the defendant consents that judgment may be entered against it for at least $2,754.

Such being the effect of the stipulation, it follows that the plaintiff may recover of the defendant $2,754 and her costs to be taxed by the clerk; and it is so ordered.