## BARKER v. UNITED STATES.

District Court, S. D. Alabama.
May 30, 1933.

S. F. Hobbs, of Selma, Ala., for plaintiff.

Alex C. Birch, U. S. Atty., and J. E. Meredith, Asst. U. S. Dist. Atty., both of Mobile, Ala.

ERVIN, District Judge.

The facts of this case are that one Lewis Walters legally married Maggie Tubb on March 29, 1914, in Perry county, Ala. That on July 21, 1918, he illegally married Arkansas Hogan at Corning, N. Y., without having been divorced from his wife, Maggie Walters. That he entered the military service of the United States on August 30, 1918, where he applied for and was granted a war risk yearly renewable insurance policy in the sum of $10,000, instructing that it should be payable to Arkansas Walters, his wife. That he died on March 28, 1919, when the policy was still in force.

After his death Arkansas Hogan or Walters, as the widow, claimed and was allowed the monthly payments by the government until April 30, 1924, amounting to $3,513.06, at which time the government had ascertained for the first time that Walters had previously married and never been divorced from Maggie Walters.

On the 16th day of March, 1929, D. K. Barker was appointed administrator of Lewis Walters by the probate court of Perry county, Ala., and this suit was instituted.

Upon learning that Walters had been married to Maggie Tubb and had not been divorced before he married Arkansas Hogan, a hearing was had before the Central Committee on Recovery of the Veterans' Bureau, and on July 18, 1925 this Committee held:

"It appears that soldier had a living, undivorced, legal wife at the time of the marriage to said Arkansas Walters. It has been held by the legal advisors of the bureau that Arkansas Walters was not the lawful wife of deceased soldier and is not, therefore, entitled to benefits."

### Decision.

"It is the opinion of this committee that as Arkansas Walters is not entitled to receive benefits from the bureau, she is not a 'beneficiary' as that term is intended and used in section 28 of the World War Veteran's Act, 1921."

Subsequent to the above decision by the Veterans' Bureau and the appointment of the plaintiff as administrator of Lewis Walters there was an award by the Veterans' Bureau of $5,759.08 to D. K. Barker, administrator de bonis non of estate of Lewis Walters, which sum was paid to him. The only question in dispute is the right of the plaintiff to recover from the government the sum paid by it to Arkansas Hogan. As to this the government claims that the administrator of Lewis Walters is estopped by the action of Lewis Walters himself in declaring that Arkansas Hogan was his wife and so inducing the government to pay to her the sums it did pay before it learned that Walters had previously married Maggie Tubb.

The administrator and the government are the only parties in this suit, and the only question in the case seems to be one of estoppel.

There have been several cases in the reports where the dead soldier has wrongfully married a second time; in Florida where these facts were presented in U. S. v. Garrison (D. C.) 39 F.(2d) 225, the case involved a con-

verted policy and not a yearly renewable policy. In Louisiana the case was presented in Robinson v. U. S. (D. C.) 33 F.(2d) 545. The case went off on a Louisiana statute.

In Cummings v. U. S. (D. C.) 34 F.(2d) 284, the facts were that there was only one wife who was married to the soldier after a divorce had been granted to her, but before the year had expired. Under the laws of that state she had no right to remarry, and the court held that this marriage was void, and, though the soldier declared her to be his wife, she was denied recovery because her marriage was held to be void.

In Schiefer v. U. S. (D. C.) 52 F.(2d) 527, the facts are almost identical with the present case, and, in addition to that, the case went off on the same plea of estoppel as is presented in this case; the court holding that because in marrying a second woman who was ignorant of the fact that he had been married before, and, declaring her to be the beneficiary as his wife, he induced the government to make payments to her, the administrator was estopped from recovering from the government. The court in that case seemed to have been very much impressed in reaching the conclusion it did by the intent of the dead soldier in declaring the woman he had married the second time to be his wife and beneficiary, and says on page 529 of 52 F.(2d) : "I am therefore of the opinion that a woman free to marry and who, in good faith, married a soldier without notice or knowledge of any legal incapacity on his part to enter into marriage with her, is, within the meaning and intendment of the congressional acts governing war-risk insurance, his wife when as beneficiary she is named as such in his application for insurance. Until higher authority constrains me to a different conclusion, I shall not assume that Congress intended to heap injury upon insult and to further penalize an innocent woman who had been defrauded into a void marriage."

It would be observed from the last sentence in that paragraph that the court must have had some serious doubt of the conclusion he reached because of his sympathy for the second woman who was married by this soldier.

In Alabama we have no such statute as Louisiana had, and whatever might be the bearing of the Florida case along the same line, if this was a similar policy to the one construed there, that was a converted policy, and not controlled by the same statute as the present one is.

In Alabama the second marriage by a man who has a living wife from whom he had never been divorced is void, and it occurs to me that the Veterans' Bureau reached the correct conclusion when it terminated the rights of Arkansas Hogan upon discovering that Lewis Walters had a living wife when he married her. She therefore has no rights to be considered in this case.

An estoppel such as this is an equitable defense, though asserted in the law court.

It is undoubtedly true that, if Lewis Walters estopped himself, then undoubtedly his administrator would also be estopped from suing the government, but that would be on the idea that the administrator was only seeking to enforce such rights as the deceased, Lewis Walters, himself had. In this case no such rights are involved.

It is true that Walters declared Arkansas Hogan to be his wife, but, under the terms of the federal law under which the policy was taken out, he was limited to certain beneficiaries and not left to declare whomsoever he would. In no event after his death was the money to be administered as a general estate in that the administrator came into possession of it as the property of Lewis Walters.

Why should Maggie Walters be estopped because Lewis Walters misled the government? The law shows little consideration for the woman who was married to Walters while he had a living wife, and I cannot see that by so holding the court adds any insult or injury to her by declaring what the law is. We may have a great deal of sympathy for her because of the wrong Lewis Walters committed on her, but that cannot affect the decision in the case as it seems to have done in the Schiefer Case. Certainly it would not be doing equity to the first wife to declare the administrator estopped to recover the money for her when *she* had done nothing to induce the government to pay the money to Arkansas Hogan.

If then the doctrine of estoppel is an equitable one, as to which there can be no dispute, what equity would debar Maggie Walters who has done nothing to induce the government to pay to Arkansas Hogan this money?

I apprehend that an examination of all the cases involving an estoppel in pais will show that this doctrine applies only against the person who sought to enjoy the fruits of the recovery.

Suppose Walters had assigned the policy to Arkansas Hogan to secure a debt, could

she have claimed the proceeds? Certainly not. Then can she claim any more by the reason he declares her to be his wife when she was not?

Suppose Lewis Walters had forged a check on the government and collected it. Certainly this would not estop the administrator in this case from a recovery.

Suppose again he had aided in any other manner some three persons to defraud the government. This again would not estop the plaintiff on the facts of this case from recovering.

It is unfortunate, though true, that the government was induced by the false representations that Arkansas Hogan was his wife into paying the money to her, but this does not defeat the right of Maggie Walters to this policy of insurance. The proceeds of this policy on the life of Walters had never been paid to Lewis Walters, nor could it have been paid to him under the law, and, if under the law these proceeds belong to Maggie Walters, the wrongful act of Lewis Walters should not deprive her of it.

Suppose Lewis Walters, instead of making the policy payable to Arkansas Hogan, had made it payable to any other person who had no right under the law to be made a beneficiary. That could not affect the rights of Maggie Walters to the proceeds of the insurance policy.

Where a bank pays a forged check, they must show that the person who is entitled to the proceeds has been guilty of some wrong in order to defeat recovery.

█ Could the proceeds of this policy have been subjected to the payment of Lewis Walters' debts?

This case is controlled by Alabama law and this identical question of whether or not the money could be used in payment of his debts has been decided by the Supreme Court of Alabama in Perrydore v. Hester, 215 Ala. 268, 110 So. 403. In this case the court says on page 269 of 215 Ala., 110 So. 403, 404:

"If the fund here involved is subject to the terms of the original act, we think it clear that upon the death of S. W. Hester, father of the insured and designated beneficiary, prior to the death of the insured, Robert L. Hester, no other beneficiary having been named, the insurance, upon the death of the insured, became payable to his widow and only child, and is not subject to the claims of creditors of the estate of the insured.

"The positive provisions against assignment, against liability for debt, and for change of beneficiary at will, forbid any valid claim based upon a pledge or agreement that the insurance should stand as security for an indebtedness growing out of loans or advances from S. W. Hester to Robert L. Hester during the lifetime of the former, and while he was the designated beneficiary of the insurance."

On page 270 of 215 Ala., 110 So. 403, 405, it is said: "An analogy is presented under our law in case of damages awarded to an administrator in actions for death by wrongful act. He is a mere trustee or conduit to receive and pass on the funds to those entitled free from the debts of the decedent."

█ It has been frequently said that, where one of two innocent persons must suffer, the one whose negligence caused the loss must bear it. In this case the loss has not been caused by negligence of either of the parties to this suit. If the money was received by the administrator to be administered as general assets of the estate, I concede that the plaintiff would be estopped, but this is not the case, for, just as shown, this money is not liable for any debts of Lewis Walters, but is to be given by the administrator to the spouse of Lewis Walters, and he could have only one spouse under the Alabama law, and that is Maggie Walters.

For these reasons I think the conclusion reached in the Schiefer Case was erroneous, and therefore decline to follow it.

Under the facts in this case it is just the same as if Walters, the deceased soldier, failed to make any designation of a beneficiary, for the one he made was not entitled to recover because she was so named. Therefore, under the law, the payment is to be made to the administrator and to be distributed under the laws of Alabama, and the case of Perrydore, supra, declares the law of Alabama on this state of facts.

I therefore find the plaintiff is entitled to recover.